(No. 22504.—

THE GREAT UNITED MUTUAL BENEFIT ASSOCIATION *et al.* Appellants, *vs.* ERNEST PALMER, Director of Insurance, Appellee.

*Opinion filed October 19, 1934—Rehearing denied Dec. 13, 1934.*

W. G. Murphey, and June C. Smith, (Hall & Dusher, John J. Baker, U. G. Ward, and George B. Rhoades, of counsel,) for appellants.

Otto Kerner, Attorney General, (John B. Harris, and David J. Kadyk, of counsel,) for appellee.

Mr. Justice Shaw delivered the opinion of the court:

The appellant the Great United Mutual Benefit Association, a corporation, and the appellant J. F. Stephens, a policyholder therein, filed a bill of complaint in the circuit court of Sangamon county seeking an injunction against appellee, as Director of Insurance, restraining him from putting into effect his order of August 4, 1933, directing the appellant association to discontinue the use of certificates of membership insuring members in so far as those certificates contained a certain clause hereinafter mentioned. In this suit the Protective Mutual Benefit Association, the New Douglas County Benefit Association, the Iroquois Mutual Benefit Association, the Superior Mutual Benefit Association, the Bond Mutual Benefit Association and the Standard Mutual Benefit Association intervened, were joined as complainants and adopted the original bill. A general demurrer was filed by the appellee, which was sustained, and the appellants having elected to stand by the bill, a final decree was entered against them. The case comes to this court on direct appeal, it being claimed that the constitutionality of a statute is necessarily involved.

The bill sets forth the organization of the appellant the Great United Mutual Benefit Association under the so-called Mutual Benefit act, approved June 27, 1927, and in force July 1, 1927; (Smith's Stat. 1933, chap. 73, pars. 505 *et seq.;* Cahill's Stat. 1933, chap. 73, pars. 435 (1)

*et seq.;*) that subsequent to its organization it prepared a certificate of membership and submitted it to the then Director of Trade and Commerce, who was at that time *ex-officio* Director of Insurance; that the form so submitted was approved by the director; that such approved form contained the so-called *"pro rata* clause" in section 12 thereof, and that subsequent to such approval approximately fourteen thousand of such certificates have been issued to members, one of them to the appellant J. F. Stephens, who as such member claims that the order of the director hereinafter set forth amounts to an impairment of his contract. The bill also alleges that the Great United Mutual Benefit Association is subject to the provisions of "An act in relation to liquidation and dissolution of delinquent insurance companies, associations and societies," approved June 26, 1925, in force July 1, 1925, under which act such a corporation may be liquidated if it has exceeded its corporate powers, and alleges that it fears the director will so proceed against said association unless enjoined. The bill contains other appropriate allegations.

The so-called *"pro rata* clause" in the policy in question to which appellee objects is as follows:

"Sec. 12. All benefit claims against the association, allowed by the board of directors during any one calendar month shall be paid from the benefit collections collected during the same calendar month, plus such excess as is hereinafter set forth and set out, as is needed, if needed, if there be any such excess benefit fund (or from an equal sum taken from the guarantee fund). Should the benefit collections of any one calendar month exceed the amount of benefit claims allowed by the board of directors during the same calendar month, then such excess shall be held in reserve to add to (or to add any portion thereof) to the benefit collections of the first future calendar month or months where the benefit collections are insufficient to pay the benefit claims allowed by the board of directors dur-

ing the same calendar month. Should the benefit collections of any one calendar month, plus all of the excess benefit fund held in reserve, over and above the guarantee fund, be inadequate to pay the benefit claims allowed by the board of directors during the same calendar month, then the benefit collections of the same calendar month, plus such excess as is hereinbefore set out (or an equal sum taken from the guarantee fund), shall be proportionately distributed among the benefit claimants of the claims allowed by the board of directors during the same calendar month, and such proportional part thereof shall constitute the specified amount due, and be the entire amount due, to be paid to said member or claimant under this certificate. In the event the entire membership of the association is less than one thousand members, then the above monthly liabilities shall not exceed one dollar per member in good standing," etc.

The Mutual Benefit act above referred to, provides in detail for the incorporation of associations on the assessment plan, intended to benefit the widows and other dependents of members within certain maximum limits and under certain classifications provided therein. Section 1 permits the organization of such associations. Section 2 provides for a preliminary declaration of intention to be executed by the organizers, which must contain a statement of the maximum amounts of benefits intended to be paid and limiting those amounts in certain classifications by age. Other details as to organization and powers contained in subsequent sections, numbered in the act from 3 to 9, are not material to a decision of this case. Section 9, in so far as material here, provides as follows: "All mutual benefit associations, incorporated or doing business under the provisions of this act shall issue to each member a certificate of membership, which certificate, in addition to a death benefit, may provide a benefit in event of permanent disability of the member, *which certificate*

*shall be approved as to form by the Director of Trade and Commerce.* Such certificate shall specify the sum of money which the association promises to pay upon contingency of death or permanent disability and upon the occurrence of such contingency the association shall be obligated to the beneficiary or the member, as the case may be, for such payment to the amount specified in the certificates," etc. Section 9a provides that the association shall be deemed insolvent under certain circumstances therein set forth. Section 10 provides in part as follows: "Whenever the association shall have been notified of any loss under its certificates of membership, which exceeds in amount the funds of the association, the president shall convene the directors of the association who shall levy an assessment for an amount sufficient to pay all such losses of the association at the time such assessment is made, and for an amount in excess thereof sufficient to maintain the guarantee fund as provided in this act. Assessments provided for in this section shall be distributed equally against the members of the association." Section 10a provides, in substance, that the association may divide its members into classes, and under certain circumstances therein set forth may distribute its assessments by classes. The act contains other provisions not material to the present inquiry.

On August 4, 1933, the appellee, in his official capacity as Director of Insurance, caused notices to be served upon the Great United Mutual Benefit Association and others similarly situated, in substance advising them that the *pro rata* clause above set forth had been disapproved by the Attorney General, and that the same was illegal, *ultra vires* and void. The associations were informed that on and after that date no association would be permitted to avail itself of the *pro rata* clause and directed them to discontinue the issuance of certificates containing it. It is against the enforcement of this notice, or so-called order, that the appellants seek an injunction and as to which they say they

fear irreparable damage through a destruction of existing business and a possible dissolution for a violation of charter powers. It is also the same order which the appellant Stephens attacks as being an impairment of his existing contract with the association.

As to the appellant Stephens, it is elementary that he cannot complain of any impairment of "contract" unless it was valid in its inception. (*Bethell* v. *Demaret*, 10 Wall. 637.) On behalf of the appellant corporations it is contended that the italicized portion of section 9, *supra*, is unconstitutional and void as an attempt to confer legislative power upon the Director of Insurance. This decision must be made entirely upon a construction of the sections of the Mutual Benefit act hereinabove mentioned; and this is true whether or not the italicized words are constitutional. In the case of *People* v. *Lewis*, 319 Ill. 154, we used the following language: "If legislative power is delegated to the Attorney General or Commissioner of Prohibition, as claimed, the act is still a valid act and appropriate for the enforcement of the constitutional provision, as already stated, without the inclusion of the provisions aforesaid with reference to the Attorney General and the Commissioner of Prohibition. A charge in an indictment or information that the unlawful act was committed without a proper or legal permit or legal authority would be a sufficient averment to negative the right or authority of the defendant to do the act in question, and if it should appear in such indictment or information that the averment was that the defendant had no legal permit or authority from the Attorney General or Commissioner of Prohibition to do the alleged illegal act, the words 'Attorney General' or 'Commissioner of Prohibition' might be regarded as surplusage.—*People* v. *Williams*, 309 Ill. 492." It is the rule that if any provision of an act is invalid it will not be of legal effect, but it will not affect the validity of the statute as a whole unless so blended with the remainder that the

legislature would not have passed the statute without such provision. *People* v. *Williams, supra; Sheldon* v. *Hoyne,* 261 Ill. 222; *Joel* v. *Bennett,* 276 id. 537.

The appellants insist that the italicized portion of section 9, *supra,* delegates legislative power upon an administrative officer, the Director of Insurance, and that it is therefore void. They cite *Shireson* v. *Walsh,* 354 Ill. 40, *People* v. *Beekman & Co.* 347 id. 92, *People* v. *Sholem,* 294 id. 204, *People* v. *Yonker,* 351 id. 139, *Lambdin* v. *Commerce Com.* 352 id. 104, *Noel* v. *People,* 187 id. 587, and *People* v. *Kane,* 288 id. 235, and in their briefs quote extensively from *People* v. *Sholem, supra.* It is not our intention to depart from the principles of law laid down in the cases cited nor from the general statement of the law as previously set forth herein. We do not, however, see the applicability of those principles to this case nor that the authorities cited are in point here. It is an established rule that if two constructions of an act are equally available, under one of which it would be void and under the other valid, that construction will be adopted which sustains the law. What, then, is the proper construction of the words, "which certificate shall be approved as to form by the Director of Trade and Commerce?" The clause which is complained of merely confers upon the Director of Insurance an administrative and supervisory control over the *form* of certificates of insurance, and does not give, nor even purport to give, him any authority as to the substance of the certificates. "Form" is the antithesis of, and is in opposition to, "substance." (*State* v. *Japone,* (Iowa) 209 N. W. 468; *Thibodeaux* v. *Thibodeaux,* 112 La. 906, 36 So. 800.) Substance is only that which is essential. (*State* v. *Burgdoerfer,* 107 Mo. 1, 17 S. W. 646.) It is our conclusion that the clause complained of was intended by the legislature to give to the Director of Insurance exactly what the act says it gives to him—*i. e.,* a supervisory control over the form of insurance certificates but no authority to pre-

scribe the substance thereof. So construed, the act is valid and constitutional.

The appellants would find themselves in no better position should we hold the clause complained of to be unconstitutional and void. Section 9 of the Mutual Benefit act is complete and workable without the italicized portion and would remain in full force should that be stricken from it. Neither would any other portions of the act be affected under the authorities above cited. It therefore follows that if the *pro rata* clause is *ultra vires,* and therefore void, the approval of the director could not validate it. If it is within the power of the corporate appellants to use such clause his disapproval could not deprive them of that right.

It is also apparent that the rights of the appellant Stephens must be determined by the same rules. Section 9 of the act requires that each certificate of membership "shall specify the sum of money which the association promises to pay upon contingency of death or permanent disability," etc., which is quite obviously at variance with the provisions of the *pro rata* clause. Under this clause, as admitted and quite fully pointed out in the briefs for the appellants, an insured might receive a substantially less sum than that mentioned on the face of the certificate, and this depreciation of face value would not be determinable or computable from the certificate. Thus, if Stephens had died in the month of March, 1934, his policy having been taken out on February 27, 1933, and assuming he had paid in twelve payments of $1.50 each, his beneficiary, if computation were made from the face of the certificate, would be entitled to receive $536. However, under the *pro rata* clause, if there were nine other deaths of persons of the same age and policy classifications during the same month, each beneficiary being entitled on the face of the certificate to $536, the sum of $5360 would be required to pay them all in full. If all ten of these claims were filed in March and were regularly allowed as of that date by the

board of directors, and if the total collections or receipts from an assessment made thereon, plus any unused benefit reserve left over from former assessments, should amount to more than $5360, all claims would be paid in full and the excess, if any, held in the benefit fund. If, however, under the circumstances above mentioned, the total collected from assessments, plus reserves, amounted to less than $5360, then each beneficiary, under the *pro rata* clause which is in question here, would receive proportionately less than the full amount of his claim, as shown by the face of the certificate. If those total funds amounted to $4824 each beneficiary would receive $482.40 instead of $536.

It is said by the appellants that this is a fair and just provision, because in return for agreeing to it the members of the association are guaranteed that their assessment will never exceed $1.50 per month. This, of course, might be a good argument to place before the legislature, but it can have no effect in a construction of what the legislature has already provided. It does not make certain that which the legislature has said must be certain, nor does the statute permit any such limitation of assessments.

It is further urged that the *pro rata* clause is another limiting clause, the same as those standard provisions provided by the insurance contract under which the amount payable to a beneficiary may be decreased under certain named circumstances, such as suicide, being injured in a mine, or having been fraudulently re-instated after a lapse while in bad health. It is said "that is certain which can be rendered certain," and that a simple calculation determines the amount payable to the beneficiary. The argument might be conceded to be sound and still fail when applied to the present case. It is true that the amount to be paid under the *pro rata* clause is determinable by a mathematical calculation, but the factors for that calculation are not all present upon the face of the policy, taken in connection with the fact of death or disability of the policy-

holder. Other and additional unknown and unknowable conditions must be taken into consideration, some of them possibly occurring through the death of other members after the contingent liability of the insurer has been fixed through the casualty to the insured. The effect of this clause is to make the insured a co-insurer with all others suffering a loss during the same month, and to this extent it becomes purely a gamble. The other limiting clauses which are claimed to be similar to this one have no such effect. If a member commits suicide within the time limited by the policy a simple calculation determines the amount of the loss. So, also, in the case of fraudulent re-instatement, or of death or injury while engaged in prohibited occupations. To them the argument may well apply that that is certain which can be made certain, but it is clearly inapplicable to the provisions of the *pro rata* clause.

The appellants cite and rely upon two Minnesota cases, *Kerr* v. *Minnesota Mutual Ass'n*, 39 Minn. 174, and *Reiter* v. *Knights and Ladies of Security*, 131 id. 82. But those cases were decided under a statute so different from our own as to be of no assistance to us in this inquiry. The Minnesota statute provided that "every certificate issued by any such association shall specify the maximum amount of benefit provided by the contract." The use of the word "maximum" gives an entirely different meaning to the act, and any decision under it would necessarily be different than under the act which we are considering. It is our conclusion that the *pro rata* clause is *ultra vires* and therefore void.

The bill of complaint stated no cause of action entitling the complainants or intervenors to an injunction or any other equitable relief, and the circuit court properly so held. Its judgment is therefore affirmed.

*Judgment affirmed.*