(No. 25223.—)

The People of the State of Illinois, Plaintiff in Error, *vs.* Henry Robinson *et al.* Defendants in Error.

*Opinion filed December 12, 1939.*

John E. Cassidy, Attorney General, Thomas J. Court-ney, State's Attorney, and A. B. Dennis, (Edward E. Wilson, John T. Gallagher, Blair L. Varnes, and Melvin S. Rembe, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Defendants in error were indicted in the criminal court of Cook county on a charge of conspiracy to administer a certain drug called sulphonol to certain race-horses prior to a race to be held the same day at a licensed race track. It is charged that these horses were entered as contestants and that defendants in error, when they so conspired, knew the drug to be administered was a depressant. The counts charged conspiracy to administer this drug to different horses. Defendants in error filed a motion to quash, which was granted, and the people have sued out this writ of error under the statute in such case made and provided.

The ground upon which the motion to quash was based is that the statute under which the indictment was drawn is ambiguous, incomplete and illiterate; that it fails to define a criminal offense, and that the statute is invalid and unconstitutional because the provisions of the amendatory act are not included within the title of the original act nor in the amendments to the title of the original act. The title of the act, so far as pertinent here, is: "An act to provide for, regulate and license horse racing and horse-race meetings in the State of Illinois and all participants therein; * * * and to provide penalties for the violation thereof." (Ill. Rev. Stat. 1939, chap. 8, p. 171.) Section 8a of this act, (Ill. Rev. Stat. 1939, chap. 8, par. 37h1, p. 176,) under which the indictment was drawn, reads, in part, as follows:

"1. Whoever administers or conspires to administer to any horse a drug or stimulant or depressant internally, externally or by hypodermic method in a race or prior thereto, or

"2. Whoever shall use or conspire to use any battery, buzzer, electrical, mechanical or other appliances other than the ordinary whip or spur for the purpose of stimulating or depressing a horse or affecting its speed in a race or workout or at any time, or

"3. Whoever sponges a horse's nostrils or windpipe or uses any method injurious or otherwise for the purpose

of stimulating or depressing a horse or affecting its speed in a race or a workout at any time, or

"4. Whoever shall have in his possession within the confines of a race track, stables, sheds, buildings or grounds or within the confines of a stable, sheds, buildings or grounds where horses are kept which are eligible to race over the race track of any racing association or licensee, any drug or medicine or stimulant or depressant or battery or buzzer, electrical, mechanical or other appliances other than the ordinary whip or spur which may or can be used for the purpose of stimulating or depressing a horse or affecting its speed at any time, or whoever shall have in his possession with the intent to sell, give away or exchange, any of such instrumentalities, provided further that such possession by anyone within the confines of a race track, stables, sheds, buildings or grounds where horses are kept which are eligible to race over the race tracks of any racing association or licensee, shall be *prima facie* evidence of intention to so use said drugs or instrumentalities.

"Anyone violating the provisions of this section shall be guilty of a misdemeanor and shall be punished for each offense by a fine of not less than $500 and not more than $1000 or by imprisonment in the county jail for not more than one year or by both such fine and imprisonment."

This section of the act under consideration was neither carefully nor skillfully drawn, but it is clearly embraced within the title as regulating horse-race meets. It is a familiar rule that doubt and uncertainty as to the constitutionality of an act are, where possible, to be resolved in favor of its validity, and where two constructions are equally available the construction holding the act valid will be adopted. (*Great United Mutual Benefit Ass'n* v. *Palmer,* 358 Ill. 276; *People* v. *Anderson,* 355 id. 289; *People* v. *McBride,* 234 id. 146.) This section of the act is not open to the constitutional objection urged.

It is necessary that a statute creating an offense, not a crime at common law, be so sufficiently specific as to show

the prohibition intended and the punishment to be imposed upon the violator of the act. (*People* v. *Beak,* 291 Ill. 449.) Where the statute describes an act, denominated as a crime, in terms so general and indefinite as to make the question of criminality depend upon the individual opinions of those having to do with its administration, and where honest and intelligent men are unable to agree against what particular act the statute inveighs, such an act is incapable of enforcement and will be held void. (*People* v. *Beak, supra.*) The test whether an act is complete, as enacted by the legislature, is whether it is sufficiently definite and certain to enable one reading it to know his rights and obligations thereunder. *People* v. *Wilson Oil Co.* 364 Ill. 406; *Vallat* v. *Radium Dial Co.* 360 id. 407.

The section of the act under which this prosecution is brought clearly defines and condemns certain treatments of race-horses. The language "Anyone violating the provisions of this section shall be deemed guilty of a misdemeanor," and fixing the punishment for such offense, sufficiently designates the act described as a misdemeanor. It was clearly the intention of the legislature that the administering to or conspiracy to administer to any race-horse a drug, either stimulant or depressant, or to do the other acts described in the paragraphs of this section of the act, or to have in one's possession, within the confines of the grounds described, these various drugs or instruments prohibited, shall constitute a misdemeanor.

We are of the opinion that the act sufficiently describes the crime charged and that the court erred in quashing the indictment.

The judgment of the criminal court is reversed and the cause remanded to that court, with directions to overrule defendants in errors' motion.

*Reversed and remanded, with directions.*