(No. 70833.—

DOROTHY REED *et al.*, Appellees, v. STANLEY T. KUSPER, JR., *et al.*, Appellants.

*Opinion filed December 4, 1992.—Rehearing denied February 1, 1993.*

78

BILANDIC, J., took no part.

HEIPLE, J., dissenting.

Jack O'Malley, State's Attorney, and Kenneth L. Gillis and Donald J. Mizerk, Assistant State's Attorneys, of Chicago, for appellant Cook County Officers Electoral Board.

Gregory A. Adamski and Karen Conti, of Adamski & Conti, of Chicago, for appellees Dorothy Reed *et al.*

R. Eugene Pincham, of Chicago, for appellees Barbara J. Norman *et al.*

JUSTICE MORAN delivered the opinion of the court:

This cause was remanded to this court from the United States Supreme Court (*Norman v. Reed* (1992), 502 U.S. 279, 116 L. Ed. 2d 711, 112 S. Ct. 698) to address the following issue of first impression: whether the

failure of a new political party to include judicial candidates on its slate invalidates the entire slate under article 10 of the Election Code (the Code) (Ill. Rev. Stat. 1989, ch. 46, par. 1—1 *et seq.*); and if it does, whether this "complete slate requirement" of the Code is unconstitutional.

On August 6, 1990, Barbara J. Norman and others (the Party) filed petitions to place their names on the November 6, 1990, election ballot as candidates for office under the Harold Washington Party (Washington Party) name. The Washington Party candidates filed as a "new" political party in Cook County under article 10 of the Code (Ill. Rev. Stat. 1989, ch. 46, par. 10—1 *et seq.*), even though the Washington Party was already an established party in the City of Chicago. The Washington Party fielded candidates for all nonjudicial, countywide offices, and for county commissioners to be elected at-large within the City of Chicago (city commissioners), county commissioners to be elected at-large from outside the City of Chicago (suburban commissioners) and commissioners of the Water Reclamation District of Greater Chicago.

Dorothy Reed and others (the objectors) filed objections to the Washington Party candidates' nomination pursuant to section 10—8 of the Code, contending that the Washington Party petitions lacked the requisite number of signatures, and had failed to meet other requirements of section 10—2 of the Code (Ill. Rev. Stat. 1989, ch. 46, par. 10—2).

The Cook County officers electoral board (the board) examined the objections and held that the Washington Party candidates were entitled to appear on the November ballot, with the exception of the candidates for the water district and the suburban-district commissioners. The board found that the Washington Party had failed to gather the necessary number of petition signatures from within those districts in support of those candidates.

The objectors appealed the board's decision to the circuit court of Cook County. That court, in an order filed on September 20, 1990, affirmed the board's decision in part and reversed it in part. It held that the failure of the suburban commissioners' candidacy and the failure to present judicial candidates resulted in a failure by the Washington Party to submit a "complete slate" of candidates as required by section 10—2 of the Code, and that therefore all Washington Party candidates were ineligible for the ballot.

This court then reviewed the circuit court's decision pursuant to Illinois Supreme Court Rule 302(b) (134 Ill. 2d R. 302(b)), and entered an order on October 12, 1990, affirming the circuit court's decision on two separate grounds. First, this court held that the Washington Party candidates could not use the Washington Party party name because it was the name of an "established political party," in violation of section 10—5 of the Code. Second, this court held that the failure of the suburban commissioners' petitions resulted in the Washington Party's failure to file a complete slate of candidates and that, therefore, its nomination papers did not comply with section 10—2. As a result, this court found it unnecessary to address the remaining points raised on appeal, among them being whether the Washington Party's failure to slate judicial candidates was fatal to its candidates' petitions.

Subsequently, the United States Supreme Court granted *certiorari*, staying our decision, and consequently allowing the election to proceed on November 6, 1990, in accordance with the decision of the board. On January 14, 1992, the Supreme Court filed an opinion upholding the decision of the board. The Court held that (1) even though the election was over, the controversy was not moot; (2) the court's interpretation of the party-name rule, section 10—5 of the Code, violated the first amendment right of political association; (3) disqualifying *all* of the Washing-

ton Party candidates with sufficient signatures because of the failure of their suburban component imposed an unconstitutional signature requirement on the Washington Party; and (4) the suburban commissioner candidates were properly disqualified for failing to gain the requisite number of signatures. However, the Court did not consider whether the failure to field a judicial slate of candidates provided an alternative ground for invalidating the Washington Party's entire slate, as was so held by the circuit court, because this question of Illinois law had not been reviewed by our court. (*Norman*, 502 U.S. at 295, 116 L. Ed. 2d at 727, 112 S. Ct. at 709.) Instead, the Supreme Court remanded this question to our court.

Resolution of this issue requires an examination of section 10—2, which states:

"Any group of persons hereafter desiring to form a new political party throughout the State, or in any congressional, legislative or judicial district, or in any other district or in any political subdivision (other than a municipality) not entirely within a single county, shall file with the State Board of Elections a petition, as hereinafter provided; and any such group of persons hereafter desiring to form a new political party within any county shall file such petition with the county clerk; ***. Any such petition for the formation of a new political party throughout the State, or in any such district or political subdivision, as the case may be, shall *** at the time of filing *contain a complete list of candidates of such party for all offices to be filled in the State, or such district or political subdivision as the case may be,* at the next ensuing election then to be held ***." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 46, par. 10—2.

Section 1—3 of the Code contains the following pertinent definitions:

"6. *'Political or governmental subdivision' means any unit of local government,* or school district in which elections are or may be held. 'Political or governmental subdi-

vision' also includes, for election purposes, Regional Boards of School Trustees, and Township Boards of School Trustees.

\* \* \*

14. 'District' means any area which votes as a unit for the election of any officer, other than the State or a unit of local government or school district, and includes, but is not limited to, legislative, congressional and judicial districts, judicial circuits, county board districts, municipal and sanitary district wards, school board districts, and precincts." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 46, pars. 1—3(6), (14).)

Accordingly, since the Illinois Constitution defines units of local government as including counties (Ill. Const. 1970, art. VII, §1), then a county must logically be a political or governmental subdivision.

The Party argues that the determinative issue in this case is whether judges are considered to be county or State officers, and claims that if we find judges to be State officers, there is then no obligation to slate them in order to have a "complete list of candidates for such district or political subdivision." The Party offers five reasons for considering judges to be State officers rather than county officers. First, judicial candidates do not file their nominating petitions with the county clerk—they file with the State Board of Elections in Springfield. Second, judges are paid by the State from appropriations by the State legislature under the Illinois Constitution. Third, article VI, section 7, of the Illinois Constitution divides the State into judicial circuits of one or more counties. The existence of multiple-county circuits precludes judges from being county officers. Fourth, article VI, sections 12 and 16, of the State Constitution provides that supreme, appellate and circuit court judges shall be nominated at primary elections or by petition. Fifth, section 7—4 of the Code defines county office or county officer in part by giving a list of examples which does not include judges.

The Party also contends that even if a judicial slate were required, the circuit court lacked authority to remove all Washington Party candidates from the ballot. This is so, it insists, since in *Anderson v. Schneider* (1977), 67 Ill. 2d 165, this court reversed the board's removal of an entire slate of "new" party candidates under section 10—2 of the Code when one of the candidates proved to be ineligible for office.

In addition to the points raised by the Party, the board (which also is a party to this action) makes some additional observations. First, it asserts that the judicial offices in question were not categorized for election purposes by means of the same political subdivision as the offices for which the Washington Party candidates were categorized. It contends that judges are elected by judicial districts (or circuits), whereas the offices for which the Washington Party slated candidates were to be elected by county. The board concludes that the applicable "district" for the judicial offices at issue was the Cook County judicial district,[1] which only *coincidentally* happens to be geographically coterminous with the "political subdivision" of Cook County. In further support of its argument, the board cites to *Black v. Cook County Officers Electoral Board* (N.D. Ill. 1990), 750 F. Supp. 901, wherein a Federal district court issued a memorandum opinion and order in response to several constitutional challenges to the Illinois circuit court's decision in the instant case. That court held that judicial candidates are elected to State, not county, offices and that, therefore, they need not be slated by new parties in a county election as a result of the "complete slate requirement."

---

[1]Or judicial *circuit*, since the "First Judicial District shall constitute a Judicial Circuit" (Ill. Const. 1970, art. VI, §7(a)), whereas the remaining four districts are subdivided into multiple circuits.

The objectors, on the other hand, argue that judges are not State officers, relying on section 7—4 of the Code. This provision defines State office as one voted for by qualified electors of the entire State, and defines county office as one voted for by the qualified electors of the entire county. The objectors claim that since Cook County judges are voted for by only the electors of Cook County, they must be county officers. The objectors describe this issue as a red herring, because the Code requires a new party to submit candidates for "all offices to be filled in the political subdivision" regardless of the nature of the offices (*i.e.*, either State or county). The objectors assert that the Washington Party was required to field candidates for all offices to be filled at the ensuing general election within Cook County, which, according to the objectors, includes judges. They also note that even if judicial candidates were required to file with the State Board of Elections instead of the county clerk, the proposed new party must still file the names of its judicial candidates with the county clerk.

The Party, however, responds that not all judges are elected by the entire Cook County electorate. Some are elected at-large from the county, some are elected from the city district, and some are elected from the suburban district. This would further suggest that judges are not county officers under the definition in section 7—4(6) of the Code. At first glance, this argument would appear to conflict with the notion that county commissioners are county officers, since they too are elected in a similar manner. However, section 7—4(6) of the Code specifically states that those commissioners occupy county offices.

Because this controversy centers upon the interpretation of a portion of section 10—2, the role of this court is to ascertain the intent of the legislature and to give effect to that intent. In determining legislative intent, the courts should first consider the statutory language; where the

language is clear and unambiguous, the courts must enforce the law as enacted without resort to other aids of statutory construction. *Kraft, Inc. v. Edgar* (1990), 138 Ill. 2d 178, 189.

The first question to be answered is whether the Washington Party must disclose candidates for all available positions, or for just those in which it intends to run a candidate. For purposes of this question, we believe that the statute is unambiguous. The statute clearly states, "Any such petition for the formation of a new political party throughout the State, or in any such district or political subdivision, as the case may be, *** shall at the time of filing contain a complete list of candidates of such party *for all offices to be filled* in the State, or such district or political subdivision as the case may be ***." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 46, par. 10—2.) It cannot be seriously contested that the "political subdivision" here in question is Cook County, as the Washington Party has slated candidates for countywide offices in Cook. Accordingly, the statute clearly requires that the petition for the formation of the Washington Party shall contain a complete list of candidates for *all* offices to be filled within the political subdivision of Cook County. (See *Anderson*, 67 Ill. 2d at 178-79.) Clearly, if the legislature meant that a new party has only to disclose the names of the candidates for each office whom it plans to run, it could have so stated.

The next question, and one in which the statute is unclear, is whether the judicial offices at issue are offices of the political subdivision in which the Washington Party is fielding candidates. If so, then the failure of the Washington Party to slate candidates for those open judgeships would have been a violation of the Code. We find it helpful to examine the interpretation of the statute by the board, the administrative agency which was established to hear and pass upon objections to the nominations of can-

didates for office (Ill. Rev. Stat. 1989, ch. 46, par. 10—9(2)). Of course, we are not bound by an administrative agency's interpretation of a statute. (*City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268* (1988), 122 Ill. 2d 353, 361.) However, courts will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute. Such an interpretation expresses an informed source for ascertaining the legislative intent. A significant reason for this deference is that agencies can make informed judgments upon the issues, based on their experience and expertise. (*Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 152-53.) We agree with the reasoning of the board, and therefore adopt its conclusion that the judges at issue "are elected not from the County of Cook as a *unit of local government,* but rather from the Cook County *Judicial District*" (emphasis added), which is a different unit of government. (Ill. Const. 1970, art. VI, §2.) Accordingly, we find that these judicial offices are not of the same "political subdivision" in which the Washington Party is fielding candidates.

In addition, section 10—2 of the Code states that any group of persons desiring to form a new political party throughout any "judicial district" shall file with the State Board of Elections, and that any such group desiring to form a new political party within any county shall file such petition with the county clerk. Clearly, if the legislature had intended judicial and county candidates to be nominated on the same petition, the legislature would have provided for these petitions to be filed in one location. These different filing procedures indicate that there is no required linkage between the two sets of offices.

Finally, although we are not bound by the Federal district court's decision in *Black,* we do adopt its reasoning

as to this issue, wherein the court placed heavy reliance upon the fact that, while judges were to be elected from separate judicial districts or circuits, all of the candidates slated by the Washington Party were to be elected from the political subdivision of a specific county, or separate districts therein (*e.g.*, city commissioners and suburban commissioners). As pointed out in *Black*, there are only three instances in which an Illinois county and a judicial district (or circuit) are coextensive, one of which is Cook County. Throughout most of Illinois, multiple counties are grouped together to form judicial circuits. Consequently, we believe that it would be contrary to the intent of the legislature to interpret the "complete slate requirement" to have required the Washington Party to field judicial candidates, and therefore, we find that its failure to do so was not fatal to its nominating petitions.

As a result of our finding as to the first part of the question remanded to us, we need not render an opinion as to the constitutionality of the "complete slate requirement" of section 10—2 of the Code. This issue is now moot, since the Washington Party satisfied section 10—2 by slating the candidates that it was required to.

Accordingly, the judgment of the circuit court with regard to this issue is reversed.

*Reversed.*

JUSTICE BILANDIC took no part in the consideration or decision of this case.

JUSTICE HEIPLE, dissenting:

I respectfully dissent from the majority opinion in this case for the following reasons. First, because it assumes without analysis or explanation that the statute under examination is not ambiguous. In that connection, I believe that the statute *is* ambiguous. Second, because the majority assigns a meaning to that statute which I believe to be

erroneous. Third, because the meaning which the majority assigns to the statute renders it unconstitutional and, thus, defective. Finally, I fault the majority for declining to deal with the constitutional infirmity which its erroneous interpretation of the statute creates.

Before indulging in more discrete analysis, it is necessary to examine the statute itself. The statute in question provides that the "petition for the formation of a new political party *** in any *** political subdivision *** shall at the time of filing contain a complete list of candidates of such party for all offices to be filled in *** such *** political subdivision." (Ill. Rev. Stat. 1989, ch. 46, par. 10—2.) The phrase "all offices to be filled" is subject to two possible interpretations. While this phrase could be interpreted to mean that a new political party must run candidates for all offices up for election, it could also be interpreted to simply mean that the new political party must list all of the candidates it intends to run for office. Thus, it is ambiguous.

Ambiguities in statutes need to be resolved by thought, study and analysis and the resolution needs to be supported with a reasonable explanation for the choice of meaning. The majority opinion does not do that. It simply chooses the meaning it likes and offers no supporting justification.

My choice for an interpretation of the ambiguous statutory language is that the new party must list all candidates that it intends to slate for office. Contrary to the majority, I would not read into the statute that new parties are required to offer full and complete slates which include all positions that are on the ballot. In that connection, it is reasonable to require that new parties list all of the candidates they intend to run at the time they file their qualifying petition. This is so since there is no possibility of filling additional candidacies at a subsequent primary election. New parties get on the ballot initially only

via the petition route and do not have a political primary election.

I am also concerned with fundamental fairness. As to fairness, it would seem that new political parties deserve to be treated on a basis of some equivalence or equality. That being the case, since established political parties are not required to offer full slates of candidates, it does not seem fair to require new political parties to do so. It is quite commonplace and legally acceptable for established political parties to offer slates of candidates with many, or in some cases most, of the positions to be filled left blank. It is difficult, if not impossible, for political parties to offer full slates in all locales. Even established political parties could not meet this requirement if called upon to do so in every case. To impose this requirement on new political parties, while excusing established political parties, amounts to a denial of equal protection of the laws. Moreover, such an interpretation diminishes the right of citizens to vote for candidates of their choice. All of this, in my opinion, violates both article I, section 2, of the Illinois Constitution and the fourteenth amendment to the Federal Constitution. (Ill. Const. 1970, art. I, §2; U.S. Const., amend. XIV.) The relevant point here is that when we have a choice between interpreting a statute in alternative ways, one of which will render the statute constitutional and the other unconstitutional, we should choose the constitutional interpretation. *People v. Robinson* (1939), 372 Ill. 503, 505.

Since the majority opinion fails on all of the above accounts, I respectfully dissent.