(No. 78678.—

*In re* LAWRENCE M. *et al.,* Minors (The Department of Children and Family Services *et al.,* Appellants).

*Opinion filed August 2, 1996.—Rehearing denied September 30, 1996.*

524

HEIPLE, J., also dissenting.

James E. Ryan, Attorney General, of Springfield (Barbara A. Preiner, Solicitor General, and Susan Frederick Rhodes, Assistant Attorney General, of Chicago, of counsel), for appellant Illinois Department of Children & Family Services.

Patrick T. Murphy and Margot Gordon, of the Office of the Cook County Public Guardian, of Chicago, for minors-appellees Lawrence M. *et al.*

Rita A. Fry, Public Defender, of Chicago (Robert C. Drizin, Assistant Public Defender, of counsel), for parents-appellees.

Diane Redleaf and Stacey Platt, of Chicago, for *amici curiae* Illinois Action for Children *et al.*

JUSTICE HARRISON delivered the opinion of the court:

In these consolidated interlocutory appeals, we are asked to decide whether the circuit court has the authority under section 2—10 of the Juvenile Court Act of 1987 (705 ILCS 405/2—10(2) (West 1994)) to enter orders requiring the Department of Children and Family Services (DCFS) to provide and pay for in-patient drug treatment services for mothers whose children were removed from their custody due to their mothers' drug-related neglect of them. On nine separate occasions in 1993 and 1994, DCFS appealed from the entry of such orders by the circuit court of Cook County, juvenile division (hereinafter juvenile court). The appellate court consolidated the appeals, and affirmed the juvenile court orders in all but two instances.[1] 269 Ill. App. 3d 253.

We allowed DCFS's petition for leave to appeal. 155 Ill. 2d R. 315. Separate appellees' briefs were filed by the office of the Cook County public guardian, on behalf of the minor children, and by the Cook County public defender, on behalf of the minors' parents. "Appellees,"

_____

[1]The appellate court reversed the juvenile court orders concerning Lawrence M., Christian M., Christopher M., and Carmon M. None of the parties seeks review of the appellate court's ruling in those cases.

as used in this opinion, refers, interchangeably, to the minor children or to their parents. We granted leave to the Austin Christian Law Center; the Children and Family Justice Center of the Northwestern University School of Law; and Illinois Action for Children, the Legal Assistance Foundation of Chicago, and Joyce M. to file *amicus curiae* briefs in support of appellees. 155 Ill. 2d R. 345.

Initially we note that, in an interlocutory appeal, the scope of review is normally limited to an examination of whether or not the trial court abused its discretion in granting or refusing the requested interlocutory relief. See *Dixon Ass'n for Retarded Citizens v. Thompson*, 91 Ill. 2d 518, 524 (1982); *Kellerman v. MCI Telecommunications Corp.*, 134 Ill. App. 3d 71, 73 (1985), *aff'd*, 112 Ill. 2d 428 (1986). However, where the question presented is one of law, a reviewing court determines it independently of the trial court's judgment. *Best Coin-Op, Inc. v. Old Willow Falls Condominium Ass'n*, 120 Ill. App. 3d 830 (1983). Moreover, to the extent necessary, a reviewing court may consider substantive issues in order to determine whether the trial court acted within its authority. See *Wilson v. Wilson*, 217 Ill. App. 3d 844, 859 (1991). In the instant case, DCFS asserts that the juvenile court acted outside its authority in directing DCFS to pay for drug treatment services to the parents of minors before the court because such orders are barred by the doctrine of sovereign immunity, violate the doctrine of separation of powers, and are not authorized by the Juvenile Court Act of 1987 (705 ILCS 405/1—1 *et seq.* (West 1994)). Therefore, to the extent necessary to resolve these substantive issues, we are not limited to the traditional scope of review of an interlocutory appeal. See *Dixon*, 91 Ill. 2d at 524-25.

We first address the question of sovereign immunity in order to determine whether the juvenile court had

subject matter jurisdiction. DCFS argues that the appellate court erred in holding that the juvenile court orders did not violate the doctrine of sovereign immunity, because each juvenile court order was directed to DCFS, a state agency, to compel the expenditure of state funds. We find little merit in this challenge. While sovereign immunity dictates that the state can be sued only in the Court of Claims, the determination of whether an action is in fact a suit against the state turns upon an analysis of the issues involved and the relief sought, rather than the formal designation of the parties. *Currie v. Lao*, 148 Ill. 2d 151, 157-58 (1992); *Healy v. Vaupel*, 133 Ill. 2d 295, 308 (1990).

In the present case, the juvenile court sought to compel DCFS, through Gary T. Morgan, its guardianship administrator and the appointed temporary custodian of each of the minors, or Carlton Williams, another DCFS administrator, to fulfill duties it believed were mandated by the Juvenile Court Act. A suit against state officials which seeks to compel them to perform their duty is not held to be a suit against the state even though the duty to be performed arises under a certain statute, and the payment of state funds may be compelled. See *In re V.H.*, 197 Ill. App. 3d 52, 58 (1990); *Franks v. Tucker*, 132 Ill. App. 3d 455, 461 (1985). Therefore, the appellate court did not err in finding that the juvenile court orders at issue here were not barred by the doctrine of sovereign immunity, where the orders essentially directed DCFS administrators to provide mandated services. 269 Ill. App. 3d at 256-57.

DCFS also contends that the juvenile court orders violated the doctrine of separation of powers because the juvenile court usurped the authority of DCFS to determine the proper services to be provided for the families involved herein. The separation of powers clause provides: "The legislative, executive and judicial

branches are separate. No branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1. However, the doctrine of separation of powers was not designed to achieve a complete divorce among the three branches of government, nor does it require governmental powers to be divided into rigid, mutually exclusive compartments. *In re J.J.*, 142 Ill. 2d 1, 7 (1991). There are instances in which the separate spheres of governmental authority overlap *(In re J.J.*, 142 Ill. 2d at 7), and this is an excellent example of one of them.

The legislature has designated DCFS as the state agency authorized to provide social services to children and their families which are directed toward, *inter alia*, "preventing or remedying, or assisting in the solution of problems which may result in, the neglect, abuse, exploitation or delinquency of children." 20 ILCS 505/1, 5(a)(3)(B) (West 1994). However, the legislature has also authorized the juvenile court, in dealing with a minor it has probable cause to believe is abused, neglected or dependent, to enter orders for the "provision of services to the minor or his family to ameliorate the causes contributing to the finding of probable cause." 705 ILCS 405/2—10(2) (West 1994). Therefore, the "evil" of the court's usurping the executive discretion of DCFS in providing child welfare services is absent in abuse and neglect proceedings, where both DCFS and the court share the duty of protecting the child's best interest and the goal of preserving families whenever possible. See *In re J.J.*, 142 Ill. 2d at 8-9; see also 325 ILCS 5/2; 20 ILCS 505/5(a)(3)(C), (a)(3)(D); 705 ILCS 405/2—10(2), (9)(d) (West 1994). Indeed, section 8.4 of the Abused and Neglected Child Reporting Act (325 ILCS 5/8.4 (West 1994)) requires that DCFS "provide or arrange for and monitor *** rehabilitative services for children and their families on a voluntary basis *or under a final or intermediate order of the Court.*" (Emphasis added.) Thus,

where it is clear that the legislature contemplated interplay between DCFS and the juvenile court in deciding the appropriate social services for neglected and abused children and their families, the juvenile court orders involved herein did not violate the doctrine of separation of powers.

Having disposed of these preliminary matters, the central issue presented for our resolution remains: whether the juvenile court, pursuant to the Juvenile Court Act, may order DCFS to provide and pay for inpatient drug treatment services for mothers whose children are removed from their custody due to the mothers' drug-related neglect of them. DCFS argues that the juvenile court has no authority to exercise a power not specifically granted to it by the Juvenile Court Act, and that because there is no statutory authority requiring that DCFS provide and pay for drug treatment services for the parents of minors, the juvenile court lacked subject matter jurisdiction to enter the orders in question. However, circuit court jurisdiction is conferred solely by the constitution, except in the limited area of administrative review. See Ill. Const. 1970, art. VI, § 9; *In re M.M.*, 156 Ill. 2d 53, 65 (1993). Therefore, contrary to DCFS's assertion, circuit courts no longer seek statutory justification for the exercise of jurisdiction. See *In re M.M.*, 156 Ill. 2d at 75 (Miller, C.J., concurring). Further, while it is true that the constitutional source of a circuit court's jurisdiction does not carry with it a license to act in ways inconsistent with controlling statutory law (see *In re M.M.*, 156 Ill. 2d at 75 (Miller, C.J., concurring)), we need not address that problem here because we believe the applicable statutory provisions support the juvenile court's orders.

It is the purpose and policy of the Juvenile Court Act to preserve and strengthen the minor's family ties, removing him from his family only when his welfare or

safety or the protection of the public cannot be adequately safeguarded. 705 ILCS 405/1—2(1) (West 1994). More particularly, section 2—10 of the Juvenile Court Act (705 ILCS 405/2—10 (West 1994)), which pertains to temporary custody proceedings following the filing of a petition alleging that a minor is abused, neglected or dependent, is part of a comprehensive statutory scheme designed to, in a just and speedy manner, "determine families in need, reunify families where appropriate and, if reunification is inappropriate, find other permanent homes for children." 705 ILCS 405/2—14(a) (West 1994). Section 2—10(2) of the Act provides, *inter alia*:

> "If the minor is ordered placed in a shelter care facility of the Department of Children and Family Services or a licensed child welfare agency, the court shall, upon request of the appropriate Department or other agency, appoint the [DCFS] Guardianship Administrator or other appropriate agency executive temporary custodian of the minor and *the court may enter such other orders related to the temporary custody as it deems fit and proper, including the provision of services to the minor or his family to ameliorate the causes contributing to the finding* of probable cause or to the finding of the existence of immediate and urgent necessity." (Emphasis added.) 705 ILCS 405/ 2—10(2) (West 1994).

Appellees argue that the plain language of this section grants the juvenile court the authority to enter orders for the provision of drug treatment services for parents whose addiction has caused or contributed to the minor's placement in shelter care. We agree, not only because the Juvenile Court Act is to be liberally construed to carry out its purpose and policies (705 ILCS 405/1—2(4) (West 1994)), but more importantly, because other statutory provisions make it clear that drug treatment for parents of neglected and abused children was among the services the legislature intended DCFS to provide.

The parties agree that the Juvenile Court Act, the

Abused and Neglected Child Reporting Act (325 ILCS 5/1 *et seq.* (West 1994)), the Children and Family Services Act (20 ILCS 505/1 *et seq.* (West 1994)), and, to some extent, the Illinois Alcoholism and Other Drug Dependency Act (20 ILCS 301/1—1 *et seq.* (West 1994)) must be construed in concert to determine the powers and responsibilities of DCFS in cases involving abuse or neglect resulting from parental drug abuse. Under the Abused and Neglected Child Reporting Act, once there is credible evidence that a child is abused or neglected, DCFS must promptly notify the child and his family of DCFS's responsibility to offer and provide "family preservation services." 325 ILCS 5/8.2 (West 1994). Family preservation services are defined in that same section as "all services to prevent the placement of children in substitute care, to reunite them with their families if so placed and if reunification is an appropriate goal, or to maintain an adoptive placement." 325 ILCS 5/8.2 (West 1994). Such services include, but are not limited to, case management services, homemaker, parent education, day care, medical assistance, and counseling, which specifically includes drug and alcohol abuse counseling. 325 ILCS 5/8.2 (West 1994).

The Children and Family Services Act states that DCFS shall have the power to provide direct child welfare services. 20 ILCS 505/5 (West 1994). Section 5(a)(3) provides, in part:

" 'Child welfare services' means public social services which are directed toward the accomplishment of the following purposes:

***

(B) preventing or remedying, or assisting in the solution of problems which may result in, the neglect, abuse, exploitation or delinquency of children;

(C) preventing the unnecessary separation of children from their families by identifying family problems, assisting families in resolving their

problems, and preventing the breakup of the family where the prevention of child removal is desirable and possible;

(D) restoring to their families children who have been removed, by the provision of services to the child and the families." 20 ILCS 505/5(a)(3)(B) through (a)(3)(D) (West 1994).

Section 5 of the Children and Family Services Act further states: "Service programs shall be available throughout the State and shall include but not be limited to the following services: (1) case management; (2) homemakers; (3) *counseling*; (4) parent education; (5) day care; and (6) emergency assistance and advocacy." (Emphasis added.) 20 ILCS 505/5(i) (West 1994). Indeed, we find it worthy of note that section 5, which addresses in detail DCFS's provision of direct child welfare services, places no limitations on the expenditure of public funds save for the purpose of performing abortions. See 20 ILCS 505/5(b) (West 1994). Rather, section 5(l) mandates that DCFS "accept for family preservation services, and *** provide appropriate services to, any family whose child has been placed in substitute care *** or any persons whose child or children are at risk of being placed outside their home" because of a report of suspected child abuse or neglect. 20 ILCS 505/5(l) (West 1994).

Additionally, section 34.4 of the Children and Family Services Act empowers DCFS "[t]o enter into referral agreements, on its own behalf and on behalf of agencies funded by [DCFS], with licensed alcohol and drug abuse treatment programs for the referral and *treatment* of clients with alcohol and drug abuse problems." (Emphasis added.) 20 ILCS 505/34.4 (West 1994). While this language seems to indicate that DCFS may enter into agreements to fund substance abuse treatment of clients, DCFS argues that it is required by statute only to recommend and refer adult clients to other state

agencies to obtain treatment. It is true that several statutory provisions allude to DCFS's duty to recommend drug or alcohol abuse treatment and to include any treatment recommendations in the family's case or service plan. See 20 ILCS 505/34.5; 325 ILCS 5/8.2 (West 1994). However, these provisions do not abrogate DCFS's responsibility to provide and pay for drug and alcohol treatment services for parents who need these services to preserve their families. Indeed, we have found no statutory provisions which require DCFS to refer parents to other state agencies to obtain services; rather, only sections requiring DCFS to refer individuals to a *licensed* program or facility. See 20 ILCS 505/34.5; 325 ILCS 5/8.2 (West 1994).

DCFS also argues that under the Alcoholism and Other Drug Abuse and Dependency Act, the Department of Alcoholism and Substance Abuse (DASA) is the state agency responsible for paying for drug and alcohol treatment. However, we agree with the appellate court that there is nothing to indicate that DASA is the exclusive state agency to provide substance abuse treatment. "Rather, DASA was designed to work with other State agencies in providing substance abuse treatment." 269 Ill. App. 3d at 261; see 20 ILCS 301/5—10(a)(4)(I), (a)(14) (West 1994). The Alcoholism and Other Drug Abuse and Dependency Act provides, in its legislative declaration, that "[t]he human, social, and economic benefits of preventing alcohol and other drug abuse and dependence are great, and *it is imperative that there be interagency cooperation in the planning and delivery of* alcohol and other *drug abuse* prevention, intervention, and *treatment efforts in Illinois.*" (Emphasis added.) 20 ILCS 301/1—5 (West 1994).

Indeed, section 5—10(a)(4) of the Alcoholism and Other Drug Abuse and Dependency Act specifies that DASA is to work with DCFS to:

"(D) Assist in the placement of child abuse or neglect perpetrators (identified by the Illinois Department of Children and Family Services) who have been determined to be in need of alcohol or other drug abuse services pursuant to Section 8.2 of the Abused and Neglected Child Reporting Act.

(E) Cooperate with and assist the Illinois Department of Children and Family Services in carrying out its mandates to:

 (i) identify alcohol and other drug abuse issues among its clients and their families; and

 (ii) develop programs and services to deal with such problems.

These programs and services may include, but shall not be limited to, programs to prevent the abuse of alcohol or other drugs by DCFS clients and their families, rehabilitation services, identifying child care needs within the array of alcohol and other drug abuse services, and assistance with other issues as required." 20 ILCS 301/5— 10(a)(4)(D), (a)(4)(E) (West 1994).

Therefore, contrary to DCFS's claim, the Alcoholism and Other Drug Abuse and Dependency Act, like the Juvenile Court Act, Abused and Neglected Child Reporting Act and the Children and Family Services Act, demonstrates the intent of our legislature to mandate DCFS's provision of drug treatment services to parents involved in juvenile abuse and neglect proceedings as a result of their drug-related neglect of their children.

Finally, DCFS argues that the appellate court's affirmance of the juvenile court orders was premised on the false assumptions that the orders were essential to the reunification of the families in question, entered after DCFS had been afforded adequate time to develop a treatment plan for the families, and interim in nature. We first note that our review of the record supports the appellate court's finding that, in each of the instant cases, DCFS did not dispute the need for in-patient drug treatment, but simply claimed that it should not be required to pay for such treatment. 269 Ill. App. 3d at

258. Additionally, in all of the cases save one, where the record is unclear, the drug treatment was either recommended by DCFS itself or by a substance abuse professional. Therefore, we see no error in the appellate court's finding that the orders were essential to the reunification of the families in question.

Next, we address DCFS's contention that the juvenile court's entry of orders for services prior to the filing of a case plan pursuant to section 2—10.1 of the Juvenile Court Act (705 ILCS 405/2—10.1 (West 1994)) is premature. DCFS claims that there was no time for it to investigate whether an in-patient drug treatment program would be appropriate for the mothers in question. However, a full review of the relevant statutes demonstrates that, in most cases, DCFS should have a treatment plan in development prior to the temporary custody hearing. Section 2—10(2) of the Juvenile Court Act provides that, at the time of the temporary custody hearing:

> "The court shall require documentation from [DCFS] as to the reasonable efforts that were made to prevent or eliminate the necessity of removal of the minor from his or her home or the reasons why no efforts reasonably could be made to prevent or eliminate the necessity of removal." 705 ILCS 405/2—10(2) (West 1994).

This language shows that DCFS must come to court with any and all documentation of its service provision efforts.

In addition, both the Abused and Neglected Child Reporting Act and the Children and Family Services Act address DCFS's responsibility to create case plans and provide services to children and families while under investigation by DCFS and *before* juvenile court involvement. The Abused and Neglected Child Reporting Act states that when DCFS's Child Protective Unit determines there is credible evidence to believe that the child is abused or neglected, DCFS "shall assess the

family's need for services, and, as necessary, develop, with the family, an appropriate service plan for the family's voluntary acceptance or refusal." 325 ILCS 5/8.2 (West 1994); see also 20 ILCS 505/34.5 (West 1994). Perhaps most significant is the provision in section 5(l) of the Children and Family Services Act that:

"[t]he child and his family shall be eligible for services as soon as the report [of suspected child abuse or neglect] is determined to be 'indicated'. The Department may offer services to any child or family with respect to whom a report of suspected child abuse or neglect has been filed, *prior* to concluding its investigation under Section 7.12 of the Abused and Neglected Child Reporting Act." (Emphasis added.) 20 ILCS 505/5(l) (West 1994).

Additionally, a review of the record shows that DCFS did not argue in the juvenile court that entry of the orders was premature because it did not yet have the opportunity to complete a case plan. Rather, the record supports the appellate court's finding that, in each of the cases, DCFS had sufficient time prior to the entry of the order to determine the family's need for drug treatment services.

We also believe that the appellate court correctly found that the juvenile court did not impose a long-term obligation on DCFS. The record shows that the juvenile court was interested in giving these mothers an opportunity to reunite their families through successful completion of an in-patient drug treatment program and that the court "recognized the need to immediately place the mothers in *** treatment programs since at the time the children were removed from the home, the mothers were most motivated to cooperate in order to get their children back." 269 Ill. App. 3d at 258. The orders at issue required DCFS to place the mothers in appropriate treatment facilities and to guarantee payment to those facilities. The orders did not prohibit DCFS from seeking funds from DASA or other sources

to pay for the mothers' treatment. See 20 ILCS 301/5—
10(a)(14) (West 1994); see also 20 ILCS 505/34.6; 325
ILCS 5/8.2(e),(f) (West 1994). Thus, contrary to DCFS's
contention, the record does indicate that the juvenile
court viewed these orders as interim in nature.

Accordingly, we hold that the juvenile court is
statutorily authorized to order DCFS to provide and pay
for in-patient drug treatment services under the circum-
stances present herein, and that the orders entered were
supported by the record and therefore not an abuse of
the court's discretion.

For the foregoing reasons, the judgment of the ap-
pellate court is affirmed.

*Affirmed.*

JUSTICE MILLER, dissenting:

I do not agree with the majority's determination
that the Department of Children and Family Services
(DCFS or the Department) may be required to pay the
costs of the in-patient alcoholism and drug abuse treat-
ment ordered in these consolidated cases. I believe that
the present orders exceed the Department's statutorily
defined duties, and therefore I dissent.

I agree with the Department that its responsibility
in these circumstances is more limited than the major-
ity envisions. An examination of the relevant statutes
demonstrates that the Department is to make referrals
for treatment of alcoholism and drug abuse, but there is
no provision that expressly authorizes or requires the
Department to pay the costs of in-patient treatment for
those conditions. Courts customarily defer to an admin-
istrative agency's interpretation of ambiguous statutory
language that the agency is charged with enforcing.
*Reed v. Kusper,* 154 Ill. 2d 77, 86 (1992); *City of Decatur
v. American Federation of State, County, & Municipal
Employees, Local 268,* 122 Ill. 2d 353, 361 (1988); *Illinois
Consolidated Telephone Co. v. Illinois Commerce*

*Comm'n*, 95 Ill. 2d 142, 152-53 (1983). I would apply that principle here and would hold that the Department cannot be compelled to pay the costs of in-patient alcoholism and drug abuse treatment programs for parents of minors who come within the Department's jurisdiction.

A general statement of the trial court's powers in cases such as these is found in section 2—10(2) of the Juvenile Court Act of 1987, which says:

> "If the minor is ordered placed in a shelter care facility of the Department of Children and Family Services or a licensed child welfare agency, the court shall, upon request of the appropriate Department or other agency, appoint the Department of Children and Family Services Guardianship Administrator or other appropriate agency executive temporary custodian of the minor and the court may enter such other orders related to the temporary custody as it deems fit and proper, including the provision of services to the minor or his family to ameliorate the causes contributing to the finding of probable cause or to the finding of the existence of immediate and urgent necessity." 705 ILCS 405/2—10(2) (West 1994).

The language of section 2—10(2) authorizing the trial court to enter orders designed to "ameliorate the causes" giving rise to judicial intervention cannot be read so broadly that it produces an absurd result. For example, I do not believe that the Department could be compelled to pay the costs of a parent's vocational training, even if the trial court believed that employment in a particular calling would ameliorate the problems that resulted in the Department's involvement in the case. Rather, the broad language of section 2—10(2) must be read in conjunction with the other statutes pertaining to the Department's powers and duties. Unlike the majority, I do not discern in section 2—10(2) or in the related statutes a legislative intent to make the Department responsible for the costs of in-patient alcoholism and drug abuse treatment programs.

Section 5(g) of the Children and Family Services Act provides:

"Rules and regulations established by the Department shall include provisions for training Department staff and the staff of Department grantees, through contracts with other agencies or resources, in alcohol and drug abuse screening techniques to identify children and adults who should be referred to an alcohol and drug abuse treatment program for professional evaluation." 20 ILCS 505/5(g) (West 1994).

In addition, section 34.4 of the Children and Family Services Act authorizes the Department "[t]o enter into referral agreements, on its own behalf and on behalf of agencies funded by the Department, with licensed alcohol and drug abuse treatment programs for the referral and treatment of clients with alcohol and drug abuse problems." 20 ILCS 505/34.4 (West 1994).

Regarding the drug and alcohol problems of clients' family members, section 34.5 of the Children and Family Services Act directs the Department:

"To make such inquiry as may be appropriate, in any intake or investigation which the Department is required or authorized to conduct, to determine whether drug or alcohol abuse is a factor contributing to the problem necessitating the Department's involvement, and, when appropriate, to refer a person to a licensed alcohol or drug treatment program, and to include any treatment recommendations in the person's case plan." 20 ILCS 505/34.5 (West 1994).

"Where appropriate, the case plan shall include recommendations concerning alcohol or drug abuse evaluation." 20 ILCS 505/6a(a) (West 1994).

The legislature has placed restrictions on the facilities to which the Department of Children and Family Services may make referrals for alcoholism and drug abuse treatment. Discussing the Department's duty to make referrals, section 8.2 of the Abused and Neglected Child Reporting Act provides, in pertinent part, "In any

case where there is evidence that the perpetrator of the abuse or neglect is an addict or alcoholic as defined in the Alcoholism and Other Drug Abuse and Dependency Act, the Department, when making referrals for drug or alcohol abuse services, shall make such referrals to facilities licensed by the Department of Alcoholism and Substance Abuse or the Department of Public Health." 325 ILCS 5/8.2 (West 1994).

Noticeably absent from all of these provisions is any indication that the Department may be required to pay the costs of in-patient treatment for parents' alcoholism or drug abuse. The preceding measures must be contrasted with the provisions of the Alcoholism and Other Drug Abuse and Dependency Act, which sets forth the powers and duties of the Department of Alcoholism and Substance Abuse. In doing so, the Alcoholism and Other Drug Abuse and Dependency Act clearly indicates the responsibility of the Department of Alcoholism and Substance Abuse to establish and fund treatment programs. The legislature has denominated that department to be the exclusive state agency to accept, receive, and expend funds for substance abuse services. 20 ILCS 301/5—10(a)(2) (West 1994). While the Department of Alcoholism and Substance Abuse is to assist DCFS in identifying substance abuse problems among the latter agency's clients and in developing programs and services for those problems, none of the enumerated activities involve the providing of in-patient treatment programs. 20 ILCS 301/5—10(a)(4)(D), (a)(4)(E) (West 1994). Indeed, the majority's result in this case undermines the role of the Department of Alcoholism and Substance Abuse as the primary state agency charged with the prevention and treatment of alcohol and drug problems among residents of Illinois.

In sum, there is no clear expression of legislative intent that the Department should be responsible for

the costs ordered by the trial judges in the cases consolidated here. Given the lack of a clear expression of legislative intent on this important matter, I would defer to the Department's own construction of its governing statutes and conclude that the Department may not be ordered to pay the costs of in-patient alcoholism and drug abuse treatment for parents of minors who are within the Department's jurisdiction. No one disputes the terrible toll that substance abuse problems can take on minors and their families. I believe, however, that the determination whether to pay the costs of providing in-patient treatment for those conditions is committed to the legislature rather than to the judiciary. In the absence of a directive from the legislature, we should not add further financial obligations to the Department's already lengthy list of duties and responsibilities. Because I do not believe that the orders here were authorized by statute, I do not address the separate question whether the Department was required to have developed service plans by the time the court hearings were held in these cases.

JUSTICES HEIPLE and McMORROW join in this dissent.

JUSTICE HEIPLE, also dissenting:
In seven unrelated temporary custody hearings, the trial court ordered the Department of Children and Family Services (DCFS) to provide and pay for in-patient drug treatment services for mothers whose children were removed from their custody due to their mothers' drug-related neglect of them. The majority today approves this practice. In fact, the juvenile court's actions were premature and an abuse of discretion. Accordingly, I dissent.

A temporary custody hearing must be held within 48 hours after authorities, acting upon the reasonable

belief that a minor has been abused or neglected, have taken that minor into custody. See 705 ILCS 405/2—3 through 2—10 (West 1994). During that 48-hour period, the DCFS's main focus is—and should be—the immediate needs of the minor for protection, crisis treatment, and shelter care. However, the majority finds that the DCFS should also have a treatment plan, including in-patient drug treatment for the minors' parents where necessary, "in development prior to the temporary custody hearing." 172 Ill. 2d at 535. Thus, in addition to securing the well-being of the child taken into custody, finding that child appropriate shelter, and preparing for the temporary custody hearing itself within 48 hours, the majority holds that DCFS is also required to conclude whether an in-patient drug treatment program is appropriate for the parents in question, to investigate what type of program would be beneficial, and to ascertain whether such programs are available.

The majority finds support for the burden it places upon the agency in section 2—10(2) of the Juvenile Court Act, which cautions that, at the time of the temporary custody hearing, the court shall require documentation as to the "reasonable efforts" that were made to prevent or eliminate the necessity of removal of the minor from his or her home. 705 ILCS 405/2—10(2) (West 1994). In the lengthy context of section 2—10(2) of the Act, which governs temporary custody hearings, I do not read a few isolated references to "reasonable efforts" to mean that the DCFS has 48 hours to place a minor's parent with an in-patient drug treatment program. As a practical matter, this 48-hour placement cannot be met. I understand the Act to require only that a court cannot order a child into temporary custody without a good-faith showing by DCFS that the placement is necessary to the immediate well-being of the child at the time of the hearing.

Moreover, the majority wholly ignores those provisions of the Act which govern the DCFS's obligation to utilize its expertise in determining what type of comprehensive service plan would best serve the families before it. Section 2—10.1 of the Act provides that once the child is temporarily removed, DCFS is required to develop a case plan for the family within 45 days. 705 ILCS 405/2—10.1 (West 1994). This case plan must utilize family preservation services. 20 ILCS 505/6a (West 1994). Indeed, section 5—8.2 of the Abused and Neglected Child Reporting Act states:

"The Department shall promptly notify children and families of the Department's responsibility to offer and provide family preservation services as identified in the service plan. Such plans may include but are not limited to: case management services; homemakers; counseling; parent education; day care; emergency assistance and advocacy assessments; respite care; in-home health care; transportation to obtain any of the above services; and medical assistance." 325 ILCS 5/8.2 (West 1994).

Thus, it is the responsibility of the DCFS to conduct an investigation into the needs of the families during this 45-day period following the minor's temporary removal and to decide what types of services would be appropriate to facilitate reunification. Given these provisions, this court should not countenance the juvenile court's hasty fiat—without the benefit of any professional evaluation or recommendation on the part of the agency charged with reunification efforts—that the DCFS provide and pay for in-patient drug counseling services for these mothers.

Finally, despite the majority's careful effort to cull supportive policy language from lengthy and interrelated statutes to buttress its analysis, I am not persuaded that the Juvenile Court Act, along with the Abused and Neglected Child Reporting Act, the Children and Family Services Act and the Illinois Alcoholism and Other Drug Abuse and Dependency Act combine

to make it "clear" that drug treatment for parents of neglected and abused children is among the services the legislatures intended the DCFS to provide. 172 Ill. 2d at 530. There are numerous statutory provisions in these Acts which direct DCFS to identify and refer those children and/or adults with drug or alcohol problems to other state agencies for evaluation and treatment. See 325 ILCS 5/8.2 (West 1994) (stating that "[i]n any case where there is evidence that the perpetrator of the abuse or neglect is an addict or alcoholic *** the Department, when making referrals for drug or alcohol abuse services, shall make such referrals to [State licensed] facilities"); 20 ILCS 505/5(g) (West 1994) (providing that "[r]ules and regulations established by the Department shall include provisions *** to identify children and adults who should be referred to an alcohol and drug abuse treatment program for professional evaluation"); 20 ILCS 505/6(a) (West 1994) (stating that "[w]here appropriate, the case plan shall include recommendations concerning alcohol or drug abuse evaluation"); 20 ILCS 505/34.5 (West 1994) (directing the Department, upon a determination that drug or alcohol abuse has necessitated its involvement, "to refer a person to a licensed alcohol or drug treatment program, and to include any treatment recommendations in the person's case plan"). None of these aforementioned provisions contemplate that DCFS itself is required to provide direct drug treatment services to parents. By declaring that the DCFS is now so required, the majority opinion renders meaningless those statutory provisions directing the DCFS to refer drug and alcohol abuse problems to other state agencies for evaluation and treatment. See *Niven v. Siqueira*, 109 Ill. 2d 357, 367 (1985) (noting the presumption that the legislature did not intend a meaningless act in enacting a statute).

The majority's decision places enormous financial

and logistical burdens on DCFS that cannot be justified by a straightforward analysis of the statutes at issue and, realistically, cannot be met. Accordingly, I respectfully dissent.