*In re* RAMI M., a Minor (The Department of Children and Family Services, Appellant, v. Rami Collins-Maat, a Minor, Appellee).

First District (5th Division)    No. 1—95—1266

Opinion filed November 1, 1996.—Rehearing denied December 17, 1996.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Barbara E. Pitts, Assistant Attorney General, of counsel), for appellant.

Patrick T. Murphy and Ron Fritsch, both of Office of Public Guardian, and Amy L. Zimmerman, Stacey Platt, and Diane L. Redleaf, all of Legal Assistance Foundation, both of Chicago, for appellee.

JUSTICE HOURIHANE delivered the opinion of the court:

This case involves an interlocutory appeal by the Department of Children and Family Services (DCFS) from an order of the juvenile court that directed DCFS to continue to pay for costly in-home services provided to a minor and his family subsequent to family reunification. We are asked to decide whether the circuit court has the authority under the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1—1 *et seq.* (West 1994)) to enter orders requiring DCFS to continue paying for services being provided to a minor and his family after DCFS has been removed as the custodial party. For the reasons stated below, we vacate the order of the circuit court and remand this cause for further proceedings.

## BACKGROUND

The minor, Rami M., was born on May 26, 1982. Joyce M., the minor's mother, suffers from a physical disability and has experienced difficulties controlling Rami's violent behavior. On July 23, 1990, pursuant to his mother's request, DCFS took temporary custody of Rami. DCFS thereafter provided services to Rami and his family and Rami was returned to his family on September 30, 1991.

In early 1993, DCFS sought and was granted temporary custody of Rami. On August 15, 1993, Joyce filed an emergency motion to vacate the temporary custody order. Over the next several months the trial court heard testimony on this issue.

On January 25, 1994, the trial court denied Joyce's motion and Rami remained in the temporary custody of DCFS. Joyce thereafter filed an emergency motion asking the court to place Rami with her under an order of protection. On April 7, 1994, the trial court entered an interim order providing that while Rami was to remain in the temporary custody of DCFS, he should be returned to his mother's home for an "unsupervised, overnight visit with his family" which was to continue until further order of the court.

Rami was returned to his mother's home and DCFS continued providing family preservation services pursuant to a DCFS service plan. On March 15, 1994, Dr. Bennett Leventhal, a professor of psychiatry and pediatrics at the University of Chicago who had been ordered by the court to prepare a placement assessment of Rami, presented his final report to the court. Dr. Leventhal's report indicated that while in his opinion it was in Rami's best interest to be returned to the custody of his mother, Rami was still in need of extensive treatment.

On February 7, 1995, the trial court held an adjudicatory hearing and the parties entered a stipulation of "no-fault dependency." A dis-

position hearing was held later that same day. At that hearing, Charles Dorothy, Rami's DCFS case worker, testified that Rami was in need of individual and family therapy, individual attention from a personal care attendant, tutorial services and anger therapy. Dorothy also stated that he did not know how long Rami would require these services and said that there was no "end in sight" for the necessity of a personal care attendant. Testimony further indicated that the cost of providing a personal care attendant alone exceeded $100,000 per year.

Following the testimony, the trial court noted the unique circumstances of the case and entered a disposition order which (1) adjudicated Rami a ward of the court, (2) found that Joyce M. was fit and willing to care for Rami "with the continued provision of indicated services," (3) returned Rami to the care and custody of Joyce M., and (4) placed Rami in the guardianship of the chief probation officer "only for the purpose of consenting to necessary medical treatment, including major medical, in the event mother withholds her consent." At the same time, the trial court denied the request by DCFS to release it from the case. DCFS now appeals from the denial of this request.

## DISCUSSION

### I

■ Initially, we note that while normally the scope of review in an interlocutory appeal is limited to an examination of whether the trial court abused its discretion in granting or refusing the requested interlocutory relief, where, as in the present case, the question presented is one of law, a reviewing court must determine the propriety of the trial court's judgment independently. *In re Lawrence M.*, 172 Ill. 2d 523 (1996). Additionally, this court may consider substantive issues in determining whether the trial court acted within its authority. See *Dixon Ass'n for Retarded Citizens v. Thompson*, 91 Ill. 2d 518, 524-25 (1982).

■ On appeal, DCFS first argues that the portion of the juvenile court's disposition order directing the Department to continue providing services to Rami and his family is barred by the doctrine of sovereign immunity. The doctrine of sovereign immunity provides that actions against the state must be filed in the Court of Claims. 745 ILCS 5/1 (West 1994). The determination of whether a suit is in fact an action against the state turns upon an analysis of the issues involved and the relief sought rather than the formal designation of the parties. *In re Lawrence M.*, 172 Ill. 2d at 526; *Senn Park Nursing Center v. Miller*, 104 Ill. 2d 169 (1984). Therefore, while suits that

will potentially subject the state to liability constitute a claim against the state that must be filed in the Court of Claims, suits against state officials that merely seek to compel them to perform their duty are not suits against the state for purposes of sovereign immunity. *In re V.H.*, 197 Ill. App. 3d 52 (1990).

■ We do not find the portions of the order at issue here to be barred by the doctrine of sovereign immunity. The portions of the disposition order directing DCFS to continue providing services to Rami and his family essentially direct DCFS administrators to provide services. Therefore, even though no particular administrator within DCFS is named as a party in this action, the order in question nonetheless compels administrators to perform their duty and therefore is not a suit against the state. See *In re Lawrence M.*, 172 Ill. 2d 523; *In re V.H.*, 197 Ill. App. 3d 52.

## II

DCFS next contends that even if the order of the juvenile court did not violate the doctrine of sovereign immunity, the court nonetheless was without subject matter jurisdiction to enter an order requiring DCFS to continue paying for services in this situation. DCFS argues that the juvenile court's subject matter jurisdiction is limited by the Juvenile Court Act and, that, under that act, the juvenile court is not empowered to order DCFS to pay for services provided to a minor who is no longer in its custody.

■ Subject matter jurisdiction refers to the powers of the court to decide the general question involved in the case, as well as the power of the court to grant the particular relief requested. *In re M.M.*, 156 Ill. 2d 53, 64 (1993). When the court acts beyond that power, its ruling is void. *People ex rel. Rice v. Appellate Court*, 48 Ill. 2d 195, 197 (1971). Clearly, the juvenile court had the power to preside over and enter orders concerning the disposition of a minor under the circumstances of this case. See 705 ILCS 405/1—1 *et seq.* (West 1994). However, an examination of the particular relief granted in this case reveals that it was beyond the juvenile court's authority.

■ When our legislature, through statutory enactment, creates rights and duties that have no counterpart in common law or equity, the legislature creates a "justiciable matter," which the courts then have the power to adjudicate. *In re M.M.*, 156 Ill. 2d 53, 65 (1993). In cases where the court is conferred power to adjudicate by virtue of a statute, the court's jurisdiction is strictly limited by the statute. *In re M.M.*, 156 Ill. 2d at 66; see also *In re P.F.*, 265 Ill. App. 3d 1092 (1994); *In re Ardedia L.*, 249 Ill. App. 3d 35 (1993); *In re Peak*, 59 Ill. App. 3d 548 (1978). Juvenile court proceedings have been specifically identi-

fied by our supreme court as proceedings subject to the limitations of the Juvenile Court Act. *In re M.M.*, 156 Ill. 2d at 66.

Juvenile court proceedings involving the disposition of a ward of the court are governed by the Juvenile Court Act of 1987. The juvenile court's authority to order the disposition of a minor was created by the legislature and is defined and limited by the language of the Juvenile Court Act. Because, as discussed below, we have determined that the Juvenile Court Act and the Children and Family Services Act (Services Act) (20 ILCS 505/1 *et seq.* (West 1994)) do not grant the juvenile court the authority to order DCFS to pay for services provided to a minor no longer in DCFS custody, we hold that the juvenile court exceeded its statutory authority.

■ It is the purpose of the Juvenile Court Act to preserve and strengthen the minor's family, removing him from his family only when his welfare, safety or that of the public cannot be adequately safeguarded. 705 ILCS 405/1—2(1) (West 1994). The Juvenile Court Act consists of a comprehensive statutory scheme designed to determine families in need, reunify families where appropriate and, if reunification is inappropriate, find other permanent homes for children. 705 ILCS 405/2—14(a) (West 1994).

Section 2—23 of the Act governs proceedings at the disposition phase and specifically provides:

"(1) The following kinds of orders of disposition may be made in respect of wards of the court:

***

(b) *A minor under 18 years of age found to be dependant under Section 2—4 may be (1) placed in accordance with Section 2—27 or (2) ordered partially or completely emancipated in accordance with the provisions of the Emancipation of Mature Minors Act.*

* * *

(3) The court also shall enter any other orders necessary to fulfill the service plan, including, but not limited to, (i) orders requiring parties to cooperate with services, (ii) restraining orders controlling the conduct of any party likely to frustrate the achievement of the goal, and (iii) visiting orders." (Emphasis added.) 705 ILCS 405/2—23(1)(b), (3) (West 1994).

Section 2—27 in turn provides:

"(1) If the court determines and puts in writing the factual basis supporting the determination of whether the parents, guardian, or legal custodian of a minor adjudged a ward of the court are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so, and that it is in the best interest of the

minor to take him from the custody of his parents, guardian or custodian, the court may at this hearing and at any later point:

(a) place him in the custody of a suitable relative or other person as legal custodian or guardian;

(b) place him under the guardianship of a probation officer;

(c) commit him to an agency for care or placement ***;

(d) commit him to the Department of Children and Family Services for care and service." 705 ILCS 405/2—27(1)(a) through (1)(d) (West 1994).

■ In the present case, Rami was adjudicated to be a "no-fault dependant" under section 2—4(c) of the Juvenile Court Act. 705 ILCS 405/2—4(c) (West 1994). Therefore, under section 2—23(1)(b), the trial court could have placed Rami in accordance with section 2—27 or entered an order finding him partially or completely emancipated. The trial court did in fact enter a disposition under section 2—27 but, in so doing, the trial court acted outside the statutory authority granted therein when it ordered DCFS to continue to pay for services provided to a minor not in its custody.

The plain language of section 2—27(1) indicates that the placement options enumerated therein are available only after the trial court has found that the minor's parent, custodian or guardian is unfit or unable to provide for the minor and it is in the minor's best interests to be removed from his or her custody. No such finding was entered in this case. Rather, the trial court returned custody of Rami to his mother after finding that it was in his best interests. Clearly, the court may determine that, under section 2—27(1), it is in the best interests of the minor to remain with the parent, custodian or guardian and enter an order so directing. However, it seems equally clear that section 2—27 does not grant the court authority to order DCFS to pay for services provided to a minor not in its custody. The only mention of services contained in section 2—27 appears in subsection (1)(d), which provides that, upon finding it necessary to remove the minor from the custody of his parent, custodian or guardian, the court may commit the minor to DCFS for "care and services." 705 ILCS 405/2—27(1)(d). Absent these circumstances, this section does not confer upon the court the authority to order DCFS to pay for services rendered to a minor or his family.

When the language of a statute is plain and unambiguous, the only role of the courts is in its application. *In re M.M.*, 156 Ill. 2d at 69. We are not vested with the authority to amend or alter a statute, regardless of any perceived benefit. Here, the trial court did not deem Rami's mother fit and able to care for Rami absent the continued provision of extensive in-home services. This finding in

turn necessitated that portion of the court's order directing DCFS to continue paying for the in-home services provided to Rami and his family. The unambiguous language of the statute does not provide for such a disposition. This conclusion is further supported by an examination of the statutes that set out the purpose and duties of DCFS.

■ The financial obligations of DCFS for the services that it refers and provides are discussed in the Children and Family Services Act (20 ILCS 505/1 *et seq.* (West 1994)). Section 1 of that act contains the following statement of purpose:

"The purpose of this Act is to create a Department of Children and Family Services to provide social services to children and their families, to operate children's institutions, and to provide certain other rehabilitative and residential services as enumerated in this Act.

*It is the intent of this Act that the child welfare services herein provided do not release the parent or guardian from responsibility to provide for the financial support of their children.*

*This primary and continuing responsibility applies whether the family unit of parents and children remain intact and reside in a common household or whether the unit has been temporarily broken by reason of child abuse, neglect, dependency or other reasons necessitating state care and training.*

It is the purpose of this Act to provide for determination for the appropriate level of support, from parents given their financial circumstances." (Emphasis added.) 20 ILCS 505/1 (West 1994).

This stated intent to hold the parents and guardians financially responsible for services provided is further addressed by section 9.1 of the Act, which provides:

"The parents or guardians of the estates of children accepted for care and training under the Juvenile Court Act or the Juvenile Court Act of 1987, or through a voluntary placement agreement with the parents or guardians, shall be liable for the payment to the Department, or to a licensed or approved child care facility designated by the Department of sums representing charges for the care and training of those children at a rate to be determined by the Department." 20 ILCS 505/9.1 (West 1994).

Accordingly, while DCFS may be obligated in certain instances to provide services to minors and their families, the underlying obligation to pay for those services remains with the minor's parent, custodian or guardian. It is within this basic framework that the remaining sections of the Children and Family Services Act and portions of the Juvenile Court Act set out exceptions to this general rule regarding the financial obligations of DCFS.

■ One situation identified in the Act where DCFS assumes the

underlying obligation for the payment of services occurs when DCFS has assumed temporary custody of a minor and, pursuant to section 5(m) (20 ILCS 505/5(m) (West 1994)), "[t]he [Department] shall have the authority, responsibilities and duties that a legal custodian of the child would have pursuant to subsection (9) of Section 1—3 of the Juvenile Court Act of 1987," which includes, *inter alia*, the provision of education and medical care. 705 ILCS 405/1—3 (West 1994).

This duty is mirrored in section 2—10(2) of the Juvenile Court Act, which governs temporary custody hearings and provides, *inter alia*:

> "If the minor is ordered placed in a shelter care facility of the Department of Children and Family Services or a licensed child welfare agency, the court shall, upon request of the appropriate Department or other agency, appoint the Department of Children and Family Services Guardianship Administrator or other appropriate agency executive temporary custodian of the minor and the court may enter such other orders related to the temporary custody as it deems fit and proper, including the provision of services to the minor or his family to ameliorate the causes contributing to the finding of probable cause or to the finding of the existence of immediate and urgent necessity." 705 ILCS 405/2—10(2) (West 1994).

Our supreme court has recently interpreted this section as clearly granting the juvenile court the authority to order DCFS to pay for the ameliorating services provided to a minor and his family while the minor is in the temporary custody of DCFS. See *In re Lawrence M.*, 172 Ill. 2d 523.

Similarly, under section 2—27(1)(d) of the Juvenile Court Act, when a minor is committed to DCFS for care and service and he is placed in the custody of the Guardianship Administrator, DCFS is likewise obligated, as the legal custodian under section 1—3 of the Act, to assume the ultimate financial responsibility for the services provided to the minor. In the present case, there was no similar authority for the court to impose the financial responsibility on DCFS for the services provided.

The minor and his mother argue that section 2—23(3) of the Juvenile Court Act does provide the trial court authority to enter an order requiring DCFS to continue paying for services provided to a minor returned to the custody of a parent. Moreover, they contend that the Juvenile Court Act and the Children and Family Services Act are to be liberally construed to meet the goal of reuniting families expressed therein.

■ First, the illustrations of orders permitted under section

2—23(3) reveal that this provision was intended to provide the juvenile court with the authority to enter orders to effectuate the service plan, not authority to alter the statutory duties discussed above.

Second, we find no inconsistency between our interpretation of the Juvenile Court Act and the statutory mandate therein to liberally construe the Act to serve the best interests of the minor. Our decision in this case in no way prohibits the juvenile court on remand from placing the minor in the custody of his mother should it find such to be in his best interests. Likewise, the court is free on remand to commit the minor to DCFS, which would then be required to provide and pay for necessary services. The question before the court here is not whether the juvenile court may seek to provide the minor with the services and placement that are in his best interests. Rather, the question before this court is limited to whether, in doing such, the court has the authority to require DCFS to pay for services provided to a minor who is no longer in its legal custody. We find that it does not.

## CONCLUSION

In this case, the trial court attempted to preserve the functional arrangement that existed prior to the disposition hearing when services were paid for by DCFS, and the minor, who was in the temporary custody of DCFS, was at home with his mother on an extended "unsupervised overnight visit." While it is clear that the trial court had the best of intentions and attempted to serve Rami's best interests, in doing so the court acted outside its statutory authority. A circuit court may not exceed its statutory authority no matter how desirable or beneficial the attempted innovation may be. *In re Peak*, 59 Ill. App. 3d 548 (1978).

For the foregoing reasons, the disposition order of the juvenile court of Cook County is vacated and this cause is remanded for proceedings not inconsistent with the opinions expressed herein. Moreover, DCFS is ordered to continue providing services to the minor and his family until such time as the juvenile court on remand enters an appropriate disposition under the Juvenile Court Act.

Vacated and remanded.

McNULTY, P.J., and COUSINS, J., concur.