*In re* BRANDON E.H., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. The Department of Children and Family Services, Respondent-Appellant).

Fourth District   No. 4—01—0251

Opinion filed October 28, 2002.—Modified on denial of rehearing December 5, 2002.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Karen J. Dimond, Assistant Attorney General, of counsel), for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and Thomas R. Dodegge, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

The Illinois Department of Children and Family Services (DCFS)

appeals from the order of the circuit court of McLean County directing DCFS to pay for psychological evaluations of delinquent minor Brandon E.H. (born March 4, 1986) and his mother by a non-DCFS-approved psychologist. The issues are whether (1) this action by the juvenile court was barred by sovereign immunity and (2) the juvenile court lacked statutory authority to direct reimbursement from DCFS. We affirm.

On November 27, 2000, the juvenile court found Brandon a delinquent minor based on his admission to an allegation of domestic battery. 720 ILCS 5/12—3.2(a)(2) (West 2000). Pending the sentencing hearing scheduled for December 22, 2000, the juvenile court directed the preparation and filing of a presentencing report and placed Brandon in the temporary custody of the detention center. At the conclusion of the November 27, 2000, hearing, the juvenile court ordered that respondent minor and his mother undergo psychological evaluations.

On December 19, 2000, Juvenile Court Services (JCS) filed a social investigation report that included psychological evaluations prepared by Alvin E. House, a licensed clinical psychologist. The social investigation report indicated that the minor was the subject of a juvenile proceeding in Woodford County (Woodford County case No. 96—JD—19) in which he had been placed in the guardianship of DCFS. On December 19, 2000, the juvenile court in Woodford County had changed the permanency goal for Brandon from remain home to independent. Following the December 22, 2000, sentencing hearing, Brandon was placed on 24 months' probation, with guardianship to remain with DCFS. On the State's motion, DCFS was added to this case as a party respondent, and DCFS was directed to reimburse McLean County $700 for the two psychological evaluations.

On January 19, 2001, DCFS filed a motion to vacate the December 22, 2000, order of reimbursement. On February 14, 2001, the juvenile court denied the motion. On April 6, 2001, at the direction of this court, DCFS's late notice of appeal was filed in the circuit court.

At the February 14, 2001, hearing, Sheri Olson, a social worker for Catholic Social Services (CSS), testified that she supervised Brandon's abuse and neglect case. CSS was contracted by DCFS to provide services for Brandon after he had been made a ward of the court in the Woodford County case. At the time Brandon was determined a delinquent in this proceeding, he was a ward of the court and under the guardianship of DCFS. Olson appeared at the delinquency hearing. DCFS was told to prepare a psychological evaluation following the November 27, 2000, hearing. The paperwork was filled out and an appointment was made in anticipation of DCFS approval. It was

scheduled during January 2001 with Dr. Marty Traver, one of 24 psychologists in the central region approved by DCFS. Olson did not make any contractual arrangements or authorizations for House to perform the psychological examinations. House was not a psychologist approved by DCFS. Based on standard policy and procedure, Olson could not approve House performing psychological examinations.

DCFS has had a case with this family since 1986 and guardianship of Brandon since September 1998. By guardianship, DCFS takes all the responsibility to ensure the health, safety, and well-being of the child in its care. Olson understood that the judge wanted the psychological evaluations completed before the sentencing hearing in order to assist the judge in making a decision in this case. At the November 27, 2000, hearing, the sentencing hearing was scheduled for December 22, 2000. Olson made Traver's office aware of the time constraints, but January 2001 was the best Traver could do. Olson stated that DCFS normally pays for psychological evaluations of minors it has guardianship of if it is approved by DCFS and provided by a DCFS-approved provider. According to Olson, there is a standard fee DCFS pays providers it contracts with, and DCFS did not have a contract with House.

Rebecca Lawson, juvenile probation officer, testified concerning (1) her involvement in the case, (2) her conversation with Olson in which Olson indicated she would arrange for the psychological evaluations, and (3) Lawson's arranging appointments with House after finding out that the evaluations arranged by Olson would not be completed in time for the sentencing hearing.

We initially determine that DCFS has standing to appeal and that this court has appellate jurisdiction. See *In re O.H.*, 329 Ill. App. 3d 254, 256-58, 768 N.E.2d 799, 801-02 (2002).

■ DCFS argues that this action by the juvenile court, ordering DCFS to pay for the services of House, was barred by sovereign immunity. This issue has already been addressed and rejected by the Supreme Court of Illinois. In *In re Lawrence M.*, 172 Ill. 2d 523, 526-27, 670 N.E.2d 710, 712-13 (1996), DCFS argued that the juvenile court acted outside its authority in directing DCFS to pay for drug treatment services to parents of minors. The supreme court stated:

"A suit against state officials which seeks to compel them to perform their duty is not held to be a suit against the state even though the duty to be performed arises under a certain statute, and the payment of state funds may be compelled." *Lawrence M.*, 172 Ill. 2d at 527, 670 N.E.2d at 713.

Therefore, as the court did in *Lawrence M.*, we find the action by the juvenile court in this case was not barred by sovereign immunity.

■ DCFS also challenges the juvenile court's statutory authority to order it to pay House's fees. To the extent the analysis of this issue involves statutory construction, we consider the question *de novo*. *Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230, 237, 664 N.E.2d 61, 65 (1996). However, the propriety of the juvenile court's order is otherwise determined on an abuse of discretion standard. See *Lawrence M.*, 172 Ill. 2d at 537, 670 N.E.2d at 717.

■ "Upon the order of the court, a social investigation report shall be prepared and delivered to the parties at least 3 days prior to the sentencing hearing." 705 ILCS 405/5—701 (West 2000). The written social investigation report shall include an investigation and report of the minor's mental history and condition, family situation, and other matters brought to the juvenile court's attention. 705 ILCS 405/5—701 (West 2000). DCFS does not contest the juvenile court's authority to order a psychological evaluation of Brandon and his mother be performed and to direct the preparation and the filing of the resultant report in the juvenile court. Juvenile courts require current social information about a minor before making important, life-affecting decisions with regard to the minor, including the possibility of committing the minor to the Department of Corrections. *In re D.B.*, 303 Ill. App. 3d 412, 423, 708 N.E.2d 806, 814 (1999). Section 5—701 of the Juvenile Court Act of 1987 (705 ILCS 405/1—1 through 7—1 (West 2000)) does not direct who is responsible for the preparation of the report or the payment for the evaluations.

DCFS suggests that, because JCS had the statutory authority to arrange for mental health services for the minor (705 ILCS 405/6—1(2)(c) (West 2000)), JCS was obligated to pay for the services instead of DCFS. We disagree.

■ DCFS is the state agency obligated to provide social services to children and their families with the purpose of "remedying, or assisting in the solution of problems which may result in, the neglect, abuse, exploitation or delinquency of children." 20 ILCS 505/5(a)(3)(B) (West 2000). Services that DCFS may make available to meet the needs of children and parents include "assessments." 20 ILCS 505/5(i) (West 2000). In accomplishing that, DCFS shall pay 100% of the reasonable costs of evaluations pursuant to a written contract between DCFS and the agency providing the services. 20 ILCS 505/5a (West 2000). In addition, DCFS has the authority to make agreements with other departments, authorities, and commissions of the state to make and receive payments for services provided to such bodies. 20 ILCS 505/23 (West 2000).

In the case at bar, Brandon was in the guardianship of DCFS when he was determined to be a delinquent and detained pending

sentencing. The juvenile court directed that a social investigation report, including psychological evaluations of Brandon and his mother, be prepared, and by statute that was required to be completed three days before the December 22, 2000, sentencing hearing. It was in Brandon's best interests that the sentencing hearing be conducted without further delay. As guardian of Brandon, DCFS, through its agent Olson from CSS, agreed to arrange for and pay for the psychological evaluations. DCFS made arrangements with its contractual service provider Traver to conduct the evaluations, but Traver could not provide the services within the time required by the juvenile court. In spite of the fact that DCFS has other psychologists and psychiatrists under contract, and even some in closer proximity to the location of the minor than Traver, DCFS did nothing to arrange for one of those providers to provide for the psychological evaluations. Instead, it fell to JCS to arrange for psychological evaluations to be performed in a timely fashion.

JCS does not have the exclusive responsibility to provide for the evaluation services. DCFS also could provide for those services. DCFS volunteered to provide them, and DCFS's failure to abide by its agreement with JCS to provide such services in this case forced JCS to make other arrangements.

The DCFS's rules requiring services to be provided by persons with whom it chooses to contract are not binding on the juvenile court, and the juvenile court may direct that services be provided without reference to DCFS rules (*In re D.D.*, 312 Ill. App. 3d 806, 810-11, 728 N.E.2d 119, 121-22 (2000)). In proceedings under the Juvenile Court Act of 1987, the juvenile court has the authority to direct the course of the proceedings in order to promptly gather information bearing on the current condition and future welfare of the persons subject to the Act. 705 ILCS 405/1—2(2) (West 2000); see *In re D.S.*, 198 Ill. 2d 309, 320, 763 N.E.2d 251, 257 (2001). Under the facts of this case, the juvenile court did not exceed its statutory authority or commit an abuse of discretion.

The order of the circuit court of McLean County directing DCFS to pay $700 as fees for House's psychological evaluations of Brandon and his mother is affirmed.

Affirmed.

COOK and APPLETON, JJ., concur.