# Illinois Official Reports

## Appellate Court

***R.L. Vollintine Construction, Inc. v. Illinois Capital Development Board*,**
**2014 IL App (4th) 130824**

| | |
|---|---|
| Appellate Court Caption | R.L. VOLLINTINE CONSTRUCTION, INC., and THE PEOPLE ex rel. R.L. VOLLINTINE CONSTRUCTION, INC., Plaintiff-Appellant, v. THE ILLINOIS CAPITAL DEVELOPMENT BOARD; JIM UNDERWOOD, in His Official Capacity as Executive Director of the Illinois Capital Development Board; THE OFFICE OF THE ARCHITECT OF THE CAPITOL; and J. RICHARD ALSOP III, in His Official Capacity as Architect of the Capitol, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-13-0824 |
| Rule 23 Order filed<br>Rule 23 Order<br>withdrawn<br>Opinion filed | September 5, 2014<br><br>October 29, 2014<br>October 29, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where plaintiff contractor filed a petition for a writ of *mandamus* to compel defendant Illinois Capital Development Board to submit for payment the invoices plaintiff tendered for work it completed and defendant approved, plus interest under the Payment Act, and defendant delayed payment based on damages arising from a water leak plaintiff caused in the course of the work it performed, the trial court properly dismissed plaintiff's petition on the ground that the Court of Claims had exclusive jurisdiction to adjudicate the dispute, especially when the Payment Act did not impose any mandatory, nondiscretionary duty on any state agencies to submit invoices for payment after the Board issued a certificate of completion. |

| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 13-MR-536; the Hon. Rudolph M. Brand, Judge, presiding. |
| --- | --- |
| Judgment | Affirmed. |
| Counsel on Appeal | Howard W. Feldman and Carl R. Draper (argued), both of Feldman Wasser, of Springfield, for appellant. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Richard S. Huszagh and John P. Schmidt (argued), Assistant Attorneys General, of counsel), for appellees. |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion. Justices Turner and Holder White concurred in the judgment and opinion. |

**OPINION**

¶ 1    In September 2010, plaintiff, R.L. Vollintine Construction, Inc. (Vollintine), entered into a construction contract with defendants, the Illinois Capital Development Board of the State of Illinois; Jim Underwood, the Board's Director; the Office of the Architect of the Capitol; and J. Richard Alsop III, the Architect of the Capitol (collectively, CDB).

¶ 2    In February 2011, during the term of the parties' contractual agreement, CDB made a claim against Vollintine for water damage CDB alleged Vollintine caused. Vollintine later sought payment for the contractual work it performed, which CDB postponed, pending resolution of its claim against Vollintine.

¶ 3    In June 2013, Vollintine filed a petition for writ of *mandamus* under article 14 of the Code of Civil Procedure (Civil Code) (735 ILCS 5/14-101 to 14-109 (West 2012)) requesting that the court order CDB to submit to the State Comptroller the invoices Vollintine tendered for the contractual work it completed and CDB approved. Vollintine also requested any statutory interest allowed under section 3-2 of the State Prompt Payment Act (Payment Act) (30 ILCS 540/3-2 (West 2012)).

¶ 4        In July 2013, CDB filed a motion to dismiss Vollintine's writ of *mandamus* pursuant to sections 2-619(a)(1) and 2-615(a) of the Civil Code (735 ILCS 5/2-619(a)(1), 2-615(a) (West 2012)). CDB contended, in pertinent part, that the trial court lacked jurisdiction to consider Vollintine's *mandamus* claim because section 8(b) of the Court of Claims Act (Claims Act) grants the Court of Claims exclusive jurisdiction over "[a]ll claims against the State founded upon any contract entered into with the State" (705 ILCS 505/8(b) (West 2012)).

¶ 5        Following an August 2013 hearing, the trial court granted CDB's motion to dismiss, finding that the Court of Claims had exclusive jurisdiction over the parties' dispute.

¶ 6        Vollintine appeals, arguing that the trial court erred by granting CDB's motion to dismiss. We disagree and affirm.

¶ 7                                I. BACKGROUND

¶ 8        In September 2010, Vollintine entered into a construction contract with CDB to fireproof structural steel in the western attic of the Illinois State Capitol building. The contract required Vollintine to obtain a general-liability policy, which Pekin Insurance provided.

¶ 9        In February 2011, CDB sent Vollintine a letter, stating, in part, as follows:

"As you are aware, on January 13, 2011, a significant water leak occurred in the west wing of the Illinois Capitol as a result of a pipe failure. A 2 1/2[-inch] pipe separated from a coupling in the west attic causing water damage from the fourth floor to the second floor. Several firms were retained by CDB to address the damage, all of which were observed by representatives of Pekin *** and Vollintine ***. To date, the State of Illinois has expended $315,632.73 to remediate damages.

The CDB believes the water leak occurred as a direct result of Vollintine's work associated with the [fireproofing] project. Therefore, CDB hereby makes a claim against Vollintine and Pekin *** to recoup all costs necessary to remedy the damages associated with the pipe failure."

¶ 10       From April to June 2011, Vollintine submitted three invoices to CDB, documenting expenses incurred as a result of the fireproofing work it performed. Later, in June 2011, Pekin denied CDB's water-damage claim because (1) CDB did not provide any documentation to support its allegation that Vollintine was responsible for the water damage and (2) Pekin's internal investigation did not support CDB's claim.

¶ 11       On January 6, 2012, Vollintine submitted its fourth invoice to CDB, which–combined with its three previous invoices–sought $513,089 for its fireproofing services. On January 11, 2012, CDB provided Vollintine a "certificate of substantial completion." The certificate documented that on August 15, 2011, "all fireproofing in west attic and laylight" was "complete." The certificate also provided, as follows:

"Substantial completion and warranty time periods affected are defined in the General Conditions of the Contract. All parties listed below have reviewed the work under this contract and recommend issuance of the substantial completion. The [Office of the Architect of the Capital] concurs with the CDB's acceptance and the [Architect/Engineer's] certification, will assume full possession and responsibility for the project or designated area, less punch[-]list items, on the above listed date. All warranties will start on the day of substantial completion, with the exception of those items on the punch list, which will start on the date of final acceptance. [Vollintine's]

responsibility *** for heat, light, other utilities, and Builder's Risk Insurance required by the contract ceases at substantial completion. Other required insurance remains [Vollintine's] responsibility until the certificate of final acceptance is issued."

The certificate of substantial completion referred to an attached "punch list" that set forth 13 items that Vollintine was required to complete or correct by October 15, 2011.

¶ 12   The "General Conditions" portion of the parties' agreement provided, in pertinent part, that after the certificate of substantial completion was issued, Vollintine was responsible for coordinating the correction or completion of any punch-list items and, thereafter, informing CDB that the contracted work was ready for final inspection. The agreement also provided that after CDB issued the certificate of substantial completion, it could take possession of or use any portion of the substantially completed area, but "[s]uch possession or use shall not be deemed acceptance of that part of the project being occupied, except as stated in the certificate, and shall not constitute a waiver of existing claims by either party."

¶ 13   On August 21, 2012, the Office of the Attorney General for the State of Illinois (AG) sent Vollintine a letter in which it concluded that after a careful review, Vollintine was responsible for the January 2011 water damage caused to the Capitol building. A listing appended to the letter documented that the State spent $458,848 to repair the water damage as of that date and estimated an additional $40,000 to $50,000 for restoration work yet to be contracted. The AG informed Vollintine that in accordance with the provisions of the parties' construction contract, once CDB determined the final amount of damages, it would withhold that amount from its payment to Vollintine for the fireproofing work performed.

¶ 14   The parties' construction contract provided that "the contractor shall be responsible for all loss or damage to the work, the project, the site and improvements thereon, the work of other contractors, and loss to CDB or the using agency including but not limited to costs of suit, property damage, attorney fees, labor or costs of labor, caused by its performance of the contract." A separate provision of the parties' agreement authorized CDB to withhold payment, in whole or in part, if Vollintine was (1) not complying with the contractual terms, which included the construction schedule; or (2) under investigation for failure to pay the prevailing-wage rate.

¶ 15   On May 10, 2013, CDB sent a letter informing Vollintine that the State spent $511,990 to repair the damage incurred as a result of the January 2011 water leak, which CDB concluded was caused by a Vollintine employee. CDB demanded that Vollintine provide compensation for costs incurred to repair the water damage. CDB's letter also stated that "[a]s you know, mediation on this matter is set for May 22, 2013." (The scheduled mediation was postponed after CDB discovered additional water damage.)

¶ 16   In June 2013, Vollintine filed a petition for writ of *mandamus* requesting that the court order CDB to submit to the State Comptroller the invoices Vollintine tendered for the fireproofing work it performed and CDB approved when it issued the certificate of substantial completion. Vollintine also requested any statutory interest allowed under section 3-2 of the Payment Act.

¶ 17   In July 2013, CDB filed a motion to dismiss Vollintine's June 2013 writ of *mandamus* under sections 2-619(a)(1) and 2-615(a) of the Civil Code. Specifically, CDB contended that (1) the trial court lacked jurisdiction to consider Vollintine's *mandamus* claim because section 8(b) of the Claims Act grants the Court of Claims exclusive jurisdiction over "[a]ll claims against the State founded upon any contract entered into with the State" (705 ILCS

505/8(b) (West 2012)), (2) Vollintine failed to state a cause of action for *mandamus* relief, (3) a writ of *mandamus* is an inappropriate remedy, and (4) the Payment Act does not apply.

¶ 18 Following an August 2013 hearing, the trial court granted CDB's motion, finding that the Court of Claims had exclusive jurisdiction over the parties' contractual dispute.

¶ 19 This appeal followed.

## II. ANALYSIS

¶ 21 Vollintine argues that the trial court erred by granting CDB's section 2-619(a)(1) motion to dismiss because the court incorrectly found that the Court of Claims had exclusive subject-matter jurisdiction over the parties' dispute. We disagree.

### A. A Section 2-619(a)(1) Motion To Dismiss and the Standard of Review

¶ 23 Section 2-619(a)(1) permits a trial court to dismiss a claim for lack of subject-matter jurisdiction. 735 ILCS 5/2-619(a)(1) (West 2012). "In reviewing the grant of a section 2-619 motion, we must interpret the pleadings and supporting materials in the light most favorable to the plaintiff." *Shirley v. Harmon*, 405 Ill. App. 3d 86, 90, 933 N.E.2d 1225, 1228 (2010). We review *de novo* a court's grant or denial of a motion to dismiss pursuant to section 2-619(a)(1) of the Civil Code. *Id*., 933 N.E.2d at 1228-29.

### B. The Pertinent Statutory Provisions

¶ 25 Prior to addressing the merits of Vollintine's argument, we first set forth the pertinent statutory provisions.

¶ 26 Section 1 of the State Lawsuit Immunity Act (Immunity Act) provides that "[e]xcept as provided in the *** Claims Act *** the State of Illinois shall not be made a defendant or party in any court." 745 ILCS 5/1 (West 2012).

¶ 27 The Claims Act created an exception to the doctrine of sovereign immunity under section 1 of the Immunity Act by permitting parties to raise monetary claims against the State in the Court of Claims. *Lake v. State*, 401 Ill. App. 3d 350, 352, 928 N.E.2d 1251, 1254 (2010). The General Assembly–which established the conditions upon which monetary claims against the state may be raised–determined that the Court of Claims should possess exclusive subject-matter jurisdiction over such claims. *Id*. Both parties concede in their respective briefs that section 8(b) of the Claims Act grants the Court of Claims exclusive jurisdiction to consider "[a]ll claims against the State founded upon any contract entered into with the State." 705 ILCS 505/8(b) (West 2012).

¶ 28 Section 3-2 of the Payment Act provides, as follows:

> "Beginning July 1, 1993, in any instance where a State official or agency is late in payment of a vendor's bill or invoice for goods or services furnished to the State, as defined in Section 1, properly approved in accordance with rules promulgated under Section 3-3, the State official or agency shall pay interest to the vendor ***[.]" 30 ILCS 540/3-2 (West 2012).

Section 3-3 of the Payment Act obligates the State Comptroller and Department of Central Management Services to jointly publish rules and policies to govern the uniform application of the Payment Act. 30 ILCS 540/3-3 (West 2012).

## C. Vollintine's Claim

As previously discussed, Vollintine filed a petition for writ of *mandamus* in the trial court essentially requesting that the court order CDB to submit its invoices, totaling $513,089, to the State Comptroller for payment. To properly frame Vollintine's argument, we set forth the purpose and requirements of a petition for writ of *mandamus*, as follows:

> " '*Mandamus* relief is an extraordinary remedy to enforce, as a matter of right, the performance of official duties by a public official where the official is not exercising discretion. A court will not grant a writ of *mandamus* unless the petitioner can demonstrate a clear, affirmative right to relief, a clear duty of the official to act, and clear authority in the official to comply with the writ. The writ will not lie when its effect is to substitute the court's judgment or discretion for the official's judgment or discretion. *Mandamus* relief, therefore, is not appropriate to regulate a course of official conduct or to enforce the performance of official duties generally.' " *Dye v. Pierce*, 369 Ill. App. 3d 683, 686-87, 868 N.E.2d 293, 296 (2006) (quoting *Hatch v. Szymanski*, 325 Ill. App. 3d 736, 739, 759 N.E.2d 585, 588 (2001)).

Commensurate with the aforementioned requirements, Vollintine's overarching claim is that the Payment Act imposed upon CDB a mandatory, nondiscretionary duty to submit its invoices to the State Comptroller for payment. Vollintine's argument that the trial court erroneously determined that the Court of Claims had exclusive subject-matter jurisdiction proceeds as follows.

Vollintine first contends, without legal citation, that the Payment Act creates "a mandatory process by which a State vendor *** is ensured that the state promptly processes its payment request or *** pay the vendor an interest penalty" for failure to do so. From that premise, Vollintine asserts that CDB's issuance of the certificate of substantial completion "triggered" CBD's duty under the Payment Act to review and act upon the submitted invoices it tendered. Vollintine then posits that the court's dismissal of its petition for writ of *mandamus* was erroneous because "[a] suit against state officials which seeks to compel them to perform their duty is not held to be a suit against the state even though the duty to be performed arises under a certain statute, and the payment of state funds may be compelled." *In re Lawrence M.*, 172 Ill. 2d 523, 527, 670 N.E.2d 710, 713 (1996). Vollintine's claim is not persuasive.

We reject the notion that CDB's issuance of a certificate of substantial completion created any duty under the Payment Act. As best we can tell, the phrase "certificate of substantial completion" is a term of art that conveys a specific meaning to professionals in the construction trade. See Black's Law Dictionary 1511 (8th ed. 2004) (The phrase "term of art" is defined as a term that has "a specific, precise meaning in a given specialty, apart from its general meaning in ordinary contexts."). The plain language of the certificate of substantial completion that CDB issued to Vollintine in January 2012 conveyed that as of August 15, 2011, Vollintine was released from certain contractual obligations related to utilities and insurance, but Vollintine remained responsible for items identified as requiring completion or correction, as well as maintaining "other required insurance." In exchange, CDB assumed full possession and responsibility for the western portion of the attic without either party relinquishing any contractual rights in so doing. The certificate of substantial completion did not address payment or the Payment Act, but, instead, provided further

guidance regarding obligations both parties had toward issuance of a certificate of *final* completion.

¶ 34 More importantly, contrary to Vollintine's assertion, the Payment Act does not impose a nondiscretionary duty upon CDB or any state agency to process payment vouchers promptly, but, instead, confirms the procedure that the Court of Claim must adhere to if it determines that claimants are due payments from state agencies. See 30 ILCS 540/3-1 (West 2012) ("The Illinois Court of Claims shall, in its investigation of payments due claimants, provide for interest penalties as prescribed in this Act ***.").

¶ 35 Our review of the plain language of the Payment Act evinces the legislature's intent to *encourage* state agencies to promptly pay vendors for goods and services provided or be subjected to further indebtedness in the form of interest penalties. The Payment Act does not, as Vollintine contends, impose upon state agencies a *mandatory*, *nondiscretionary* duty to submit invoices to the State Comptroller for payment after a certificate of substantial completion has been issued. Indeed, the administrative rules and policies promulgated by the State Comptroller and Department of Central Management Services governing the uniform application of the Payment Act mandate general and specific duties a state agency must satisfy, none of which support Vollintine's claim or are relevant to this appeal. See 74 Ill. Adm. Code 900.30, 900.35, 900.40 (2002) (delineating general and specific duties state agencies must satisfy under the Payment Act).

¶ 36 In this case, the facts clearly show a controversy between the parties regarding payment for services rendered pursuant to a construction contract. Specifically, Vollintine has requested payment from CDB for services rendered, and CDB has postponed payment because of the damages it incurred as a result of a water leak CDB claims Vollintine caused. Under these undisputed facts, we agree with the trial court that the Court of Claims has exclusive jurisdiction to adjudicate this litigation under section 8(b) of the Claims Act. Accordingly, we affirm the court's judgment.

¶ 37                                    III. CONCLUSION

¶ 38 For the reasons stated, we affirm the trial court's judgment.

¶ 39 Affirmed.